AIRLINES REPORTING CORPO-
RATION, Plaintiff–Counter–
Defendant–Appellant,

v.

S AND N TRAVEL, INC., doing business
as Superior Travel, Efraim Schwartz,
and Walter Newmark, Defendants–
Counter–Claimants–Appellees.

No. 1301, Docket 94–9062.

United States Court of Appeals,
Second Circuit.

Argued March 14, 1995.

Decided June 27, 1995.

Thomas F. Cullen, Jr., Washington, DC (Harold K. Gordon, Jones, Day, Reavis & Pogue, New York City, Kathryn M. Fenton, Jones, Day, Reavis & Pogue, Washington, DC, of counsel), for appellant.

Barry Roberts, Chevy Chase, MD (Roberts & Hundertmark, Chevy Chase, MD, of counsel), for appellees.

Before: MESKILL, CARDAMONE and ALTIMARI, Circuit Judges.

MESKILL, Circuit Judge:

Airlines Reporting Corporation (ARC) brought this diversity action in its capacity as representative of numerous air carriers, seeking to collect from appellees approximately $375,000 owed to those carriers for the purchase of airline tickets. On appeal ARC challenges the decision of the United States District Court for the Eastern District of New York, Weinstein, *J.*, to dismiss its complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. The principal questions we must address are whether ARC, representing the air carriers, may maintain this action independent of the assignments obtained by ARC from the carriers to prosecute this action, and if not, whether the assignments were collusively made for the purposes of manufacturing federal jurisdiction in violation of 28 U.S.C. § 1359.[1] We answer the first question in the negative and the second in the affirmative. We agree with the district court that it lacked subject matter jurisdiction over this suit and, therefore, we affirm the district court's decision to dismiss the complaint.

## BACKGROUND

Appellant ARC is a not-for-profit corporation, incorporated in Delaware, which maintains its principal place of business in Arlington, Virginia. ARC was created in 1984 by a consortium of domestic air carriers, its sole shareholders, to function as a clearinghouse and collection agent for transactions between the air carriers and travel agents.

ARC essentially acts as an intermediary in the air transportation industry. Travel agents accredited by ARC are furnished with standard form traffic documents, which the agents issue to their customers as airline tickets for travel on particular air carriers. The carriers honor these tickets as if issued by themselves directly. In turn the travel agents report their sales and remit the money due for the tickets, minus commissions, to the carriers through ARC. ARC then is responsible for forwarding the sales proceeds to the appropriate air carrier.

One hundred and forty-three air carriers have agreed to participate in this ticket distribution system by executing a "Carrier Services Agreement" (CSA) with ARC. Section XVIII of the CSA grants ARC the power of attorney to enter into contracts with travel agents on behalf of the carriers and to institute legal proceedings against any agent to collect funds owed to the carriers on transactions involving ARC ticket stock. Pursuant to that power of attorney, ARC enters into an "Agent Reporting Agreement" (ARA) with travel agencies on behalf of itself and the carriers. In signing the ARA travel agents explicitly agree to sell tickets on behalf of participating air carriers in the specific manner outlined in the ARA, and to conduct business with these carriers solely through ARC.

In October 1989 ARC and S & N Travel, Inc. (S & N) executed the ARA, entitling S & N to be listed as an ARC-accredited travel agency. S & N is a New York corporation with its principal place of business in New York City, and is owned and operated by co-defendants Ephraim Schwartz and Walter Newmark, also citizens of New York. On September 7, 1990 S & N voluntarily requested that it be deleted from ARC's list of accredited travel agencies. In response ARC notified all participating carriers of the request in order to determine if S & N owed any money for tickets ordered and issued. ARC discovered that S & N owed $374,-711.68 to a total of twenty-nine air carriers for tickets issued by S & N during the period from December 1988 to September 1990.[2]

---

1. Section 1359 provides:

   A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

2. ARC's complaint alleged that S & N owes the following amounts to each of the air carriers:

| Carrier | Amount Claimed |
| --- | --- |
| Pan American World Airways | $90,475.85 |
| Continental Airlines | 28,385.49 |
| United Airlines | 27,652.69 |
| Eastern Air Lines | 20,838.76 |
| British Airways | 19,444.11 |
| Northwest Airlines | 16,141.50 |
| K.L.M. Royal Dutch Airlines | 15,315.42 |
| Alitalia | 15,101.59 |
| Trans World Airlines | 13,837.13 |

After attempts to collect this sum failed, ARC, invoking federal diversity jurisdiction, instituted this action against S & N, Schwartz and Newmark (herein collectively S & N) in the Eastern District of New York on behalf of the twenty-nine air carriers. The complaint alleged claims of breach of contract, breach of fiduciary duty, conversion, fraud and negligence under New York common law.

S & N immediately moved to dismiss the complaint, asserting that the district court lacked subject matter jurisdiction over the action. *See* Fed.R.Civ.P. 12(b)(1). Specifically, S & N contended that ARC was acting solely as a collection agent for the individual air carriers pursuant to the power of attorney contained in the CSA and, therefore, the citizenship of the individual air carriers, rather than that of ARC, controlled for the purposes of diversity jurisdiction. S & N argued that complete diversity thus was lacking, as at least one of the air carriers, Pan American World Airways (Pan Am), maintained its principal place of business in New York. Further, as Pan Am was the only carrier with a claim in excess of $50,000, S & N argued that with respect to the other carriers ARC's complaint failed to satisfy the threshold amount in controversy required by 28 U.S.C. § 1332.

Following the filing of the motion to dismiss ARC obtained assignments of the claims against S & N from all but three of the twenty-nine carriers.[3] The assignments stated in pertinent part:

> For value received assignor hereby transfers, assigns, and sets over to assignee, for collection ... all of assignor's right, title and interest, legal and equitable, in and to any and all claims submitted to the assignee which arise from the default of [S & N] pursuant to the [ARA] and [CSA].

ARC concedes that the CSA, in turn, requires that any money recovered by ARC, less the costs of prosecuting this lawsuit, must be remitted to the individual air carriers.

ARC thus asserted that the assignments made it, and not the air carriers, the real party-in-interest for the purposes of determining diversity jurisdiction. Relying on the presence of the assignments the district court agreed, and denied S & N's motion to dismiss without prejudice. S & N renewed its motion following the completion of discovery, arguing that ARC collusively obtained the assignments from the air carriers and thereby manufactured diversity jurisdiction in violation of 28 U.S.C. § 1359. The district court agreed, finding the assignments "suspicious" for several reasons:

> First, the assignments were made only after the jurisdiction of this court was challenged by the defendants. Second, while the assignments on their face transfer all right, title and interest in the claims to ARC, in reality, the carriers retain the primary interest in the claims because ARC has agreed to transfer to the carriers any money obtained from the litigation, less the cost of prosecuting the case. Third, ARC paid no meaningful consideration for the assignments.

*Airlines Reporting Corp. v. S & N Travel,* 857 F.Supp. 1043, 1049 (E.D.N.Y.1994). Accordingly, the district court held that the air carriers, rather than ARC, were the real parties to this controversy. As Pan Am was not diverse to the defendants and, without Pan Am, the other air carriers could not satisfy the requisite jurisdictional amount in

| Carrier | Amount Claimed |
|---|---|
| Air France | $13,235.62 |
| American Airlines | 13,219.23 |
| Cathay Pacific Airways | 11,890.04 |
| Olympic Airways | 11,800.58 |
| MGM Grand Air | 10,999.31 |
| US Air | 9,473.19 |
| Swissair | 7,907.24 |
| Iberia Airlines of Spain | 6,465.12 |
| America West Airlines | 6,464.51 |
| Delta Air Lines | 6,377.77 |
| Austrian Airlines | 5,882.80 |
| Scandinavian Airlines System | 5,235.12 |

| Carrier | Amount Claimed |
|---|---|
| Lan Chile Airlines | $4,150.34 |
| UTA | 4,053.84 |
| Thai Airways International | 2,796.42 |
| Lufthansa German Airlines | 2,716.06 |
| Quantas Airways | 1,795.70 |
| TAP—Air Portugal | 1,496.94 |
| El Al Israel Airlines | 858.52 |
| Aeromexico | 700.79 |
| Total | $374,711.68 |

**3.** No assignments were obtained for Aeromexico, Cathay Pacific or UTA.

controversy without aggregating their claims, the district court concluded that it lacked diversity jurisdiction over the case and granted S & N's motion to dismiss. ARC now appeals.

## DISCUSSION

Diversity of citizenship jurisdiction is conferred on "all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a). We review the district court's dismissal of ARC's complaint for lack of subject matter jurisdiction *de novo. See Rent Stabilization Ass'n of the City of New York v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993).

### I.

■ We first must consider whether ARC independently satisfies the jurisdictional requirements imposed by section 1332(a). If, as ARC suggests, it was the "real party" in this action, we would have no cause for addressing the propriety of the assignments. *See Bradbury v. Dennis*, 310 F.2d 73, 74 (10th Cir.1962), *cert. denied*, 372 U.S. 928, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963).

■ It is well established that for a case to come within the diversity statute there must be complete diversity among all parties; that is, no plaintiff and no defendant may be citizens of the same state. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435

(1806). ARC is a corporation, and courts treat corporations as entities having the status of citizens. *See Marshall v. Baltimore & Ohio R. Co.*, 57 U.S. (16 How.) 314, 328–29, 14 L.Ed. 953 (1854); *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 187–89, 110 S.Ct. 1015, 1017–18, 108 L.Ed.2d 157 (1990) (explaining development of the citizenship status of corporations in diversity cases). Thus, in maintaining an action grounded on diversity jurisdiction, ARC normally may assert its own citizenship, rather than that of its shareholders, to establish complete diversity. *See* 28 U.S.C. § 1332(c)(1) (considering corporations citizens of the state in which they are incorporated and the state in which they maintain their principal place of business).

■ ARC's corporate status, however, does not end the jurisdictional inquiry in this case. The Supreme Court has established that the " 'citizens' upon whose diversity a plaintiff grounds jurisdiction *must be real and substantial parties to the controversy*." *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460, 100 S.Ct. 1779, 1781–82, 64 L.Ed.2d 425 (1980) (emphasis added; citations omitted).[4] Thus, ARC is deemed a citizen of both Delaware and Virginia for diversity purposes only in those suits affecting the interests of the corporation itself. *See Nat'l Ass'n of Realtors v. Nat'l Real Estate Ass'n*, 894 F.2d 937, 939 (7th Cir.1990) (stating that the rule governing citizenship of corporations in diversity cases "presupposes that the wrong is to the corporation rather than to the shareholders

4. This terminology, however, should not be confused with the "real party in interest" standard set forth in Fed.R.Civ.P. 17(a). Rule 17(a), which requires that a lawsuit be brought in the name of the "real party in interest," is a procedural rule which does not extend or limit the subject matter jurisdiction of a federal court. *See* Fed.R.Civ.P. 82; *see also* 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1556, at 421 (noting that Rule 17(a) does not operate to confer jurisdiction which does not otherwise exist). The Supreme Court has noted that while there exists a " 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy ... the two rules serve different purposes and need not produce identical outcomes in all cases." *Navarro*, 446 U.S. at 462 n. 9, 100 S.Ct. at 1783 n. 9.

Thus, although ARC is a "real party in interest" in the sense that this action properly may be maintained in ARC's name, *see* Fed.R.Civ.P. 17(a) (defining real parties-in-interest to include those parties "with whom or in whose name a contract has been made for the benefit of another"), ARC must establish it is the real party to this controversy for the purposes of determining diversity jurisdiction. *See Wilsey v. Eddingfield*, 780 F.2d 614, 615 (7th Cir.1985) ("a representative [under Rule 17(a) ] is not necessarily the real party in interest for the purpose of determining diversity jurisdiction"), *cert. denied*, 475 U.S. 1130, 106 S.Ct. 1660, 90 L.Ed.2d 202 (1986); *see also Rock Drilling, Etc., Building and Common Laborers' Local Union No. 17 v. Mason & Hanger Co.*, 217 F.2d 687, 693–94 (2d Cir.1954), *cert. denied*, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955).

or members directly"). Where a party sues or is sued in a representative capacity, however, its legal status is regarded as distinct from its position when it operates in an individual capacity. *Cf. Hispanic Soc'y of the New York City Police Dep't v. New York City Police Dep't*, 806 F.2d 1147, 1152–53 (2d Cir.1986); *aff'd on other grounds sub nom. Marino v. Ortiz*, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988) (per curiam). Accordingly, we will not deem ARC's corporate citizenship controlling when it acts merely as an agent representing the interests of others. In such a case, the citizenship of the represented individuals controls for diversity purposes, as they are the real and substantial parties to the dispute.

In initiating this lawsuit ARC did not seek to protect any corporate interests of its own. Rather, ARC simply sought to fulfill its obligations under the CSA as both collection agent and attorney for those twenty-nine air carriers owed money by S & N. Its complaint acknowledges as much, stating that "ARC is ... an agency of the air carriers." ARC does not suggest that it suffered any corporate damage or pecuniary loss itself from S & N's failure to pay for the issued airline tickets. Nor does ARC lay claim to any portion of the potential recovery obtained in the lawsuit, as it concedes that section XII of the CSA, which describes ARC's collection process, obligates ARC to remit any damages it collects in this action to the twenty-nine claim-holding air carriers. Thus, ARC is a mere conduit for a remedy owing to others, advancing no specific interests of its own. *See McNutt v. Bland*, 43 U.S. (2 How.) 9, 13–14, 11 L.Ed. 159 (1844) (holding conduit for remedy owing to others not real party-in-interest); *Ferguson v. Ross*, 38 F. 161, 162–63 (C.C.E.D.N.Y.1889); *cf. Navarro*, 446 U.S. at 465, 100 S.Ct. at 1784. If the air carriers, as opposed to ARC, were the ones injured by the defendants' conduct, "they cannot by enlisting their association as their champion break out of the limits of the diversity jurisdiction." *Nat'l Ass'n of Realtors*, 894 F.2d at 942. Accordingly, we view the twenty-nine air carriers as the "real and substantial parties" to this controversy and turn to their citizenship for diversity purposes, unless, of course, ARC obtained a valid stake in the litigation through the assignments.

## II.

■ This brings us to the question whether the assignments were "improperly or collusively" made within the meaning of section 1359. We give careful scrutiny to assignments which might operate to manufacture diversity jurisdiction, the reasons for which we have made abundantly clear: "such devices, unless controlled, can provide a simple means of expanding federal diversity jurisdiction far beyond [its] purpose." *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 474 (2d Cir.1976); *see also O'Brien v. AVCO Corp.*, 425 F.2d 1030, 1033 (2d Cir.1969). The cautious eye with which we view such assignments ensures that parties do not inappropriately channel ordinary tort and contract litigation, essentially disputes of a local nature, into the federal courts. *See O'Brien*, 425 F.2d at 1033; *see also Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828–29, 89 S.Ct. 1487, 1490–91, 23 L.Ed.2d 9 (1969). Accordingly, we construe section 1359 broadly to bar any agreement whose "primary aim" is to concoct federal diversity jurisdiction. *O'Brien*, 425 F.2d at 1034; *see also Prudential Oil*, 546 F.2d at 475.

■ Certain kinds of diversity-creating assignments warrant particularly close attention. For instance, in *Prudential Oil* we considered an assignment of a claim made by a non-diverse parent corporation to its wholly owned subsidiary, a party diverse from the defendant. Noting the ease with which affiliated corporations may shield the real purpose of such transfers from judicial scrutiny and, moreover, the increased possibility of collusion between related entities, we held that assignments between parent companies and their subsidiaries must be treated as presumptively ineffective. *See Prudential Oil*, 546 F.2d at 476.[5] We then stated that to

---

5. ARC asks this Court to overrule *Prudential Oil*, noting that the Seventh Circuit has declined to follow its holding. *See Herzog Contracting Corp.* *v. McGowen Corp.*, 976 F.2d 1062, 1067 (7th Cir.1992) (reasoning that if Congress wanted to adopt the presumption of collusion, it would

overcome such a presumption the plaintiff-assignee must articulate a legitimate business purpose for the assignment. *See id.; Drexel Burnham Lambert Group v. Galadari*, 777 F.2d 877, 881 (2d Cir.1985). Although ARC and the air carriers do not enjoy a parent-subsidiary relationship, we nonetheless believe that their close ties trigger the presumption of collusion in this case.

ARC does not dispute S & N's assertion that nine of ARC's fourteen directors are representatives of the air carriers who have assigned their claims against S & N to ARC. ARC further does not dispute that those of its shareholders owed money by S & N also have assigned their rights to ARC. While we have never before applied the presumption of collusion to assignments involving corporate directors and shareholders, on this record we find sufficient identity of corporate interests to apply the presumption here. As with assignments between parent and subsidiary companies, the transfer of legal title to the claims between the parties can easily be arranged, increasing the potential for collusion and compounding the difficulty in detecting the true purpose for the assignment. *See Prudential Oil*, 546 F.2d at 475–76. As both scenarios necessarily present the opportunity for the collusive manufacture of jurisdiction, thereby frustrating the goals of section 1359, we can think of no reason why the presumption of collusion should not apply with equal force to either. Indeed, the Ninth Circuit already has arrived at a similar conclusion. *See Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir.1989). Accordingly, we hold that the presumption of collusion applies here, and we thus turn to ARC's proffered justifications for the assignments.

We begin by noting that simply offering evidence of a business reason will be insufficient to rebut the presumption. Instead, the burden falls on the party asserting

diversity to demonstrate that the reason given for the assignment is legitimate, not pretextual. *See Prudential Oil*, 546 F.2d at 476 (assignee must "provide a basis for the inference that a legitimate business reason, unconnected with [the] acquisition of diversity jurisdiction, existed for the assignment"); *see also Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 992 (9th Cir.1994) (stating business reason asserted "must be sufficiently compelling that the assignment would have been made absent the purpose of gaining a federal forum") (quotation omitted). Several factors may be relevant in evaluating the reasons given for an assignment, although no single one will be dispositive. *See generally* 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3639 (detailing review of assignments under 28 U.S.C. § 1359). Courts consider, *inter alia:* the assignee's lack of a previous connection with the claim assigned, *see Kramer*, 394 U.S. at 827, 89 S.Ct. at 1489; the remittance by the assignee to the assignor of any recovery, *see id.;* whether the assignor actually controls the conduct of the litigation, *see Prudential Oil*, 546 F.2d at 476; the timing of the assignment, *see Drexel Burnham Lambert*, 777 F.2d at 881; the lack of any meaningful consideration for the assignment, *Dweck*, 877 F.2d at 793; and the underlying purpose of the assignment, *see O'Brien*, 425 F.2d at 1034 (holding section 1359 bars "agreements whose primary aim was to vest the court with jurisdiction it had not formerly enjoyed").

John McHugh, ARC's Director of Financial Recovery, provided the district court with the following rationale for obtaining the assignments:

The assignments ARC has been provided by the carriers in this case greatly reduce duplication of effort by individual carriers and ARC, and provide an efficient and

have done so explicitly). As Judge Mansfield explained in *Prudential Oil*, however, the presumption of collusion rests on Supreme Court precedent which, of course, we are bound to follow. *See Prudential Oil*, 546 F.2d at 475 (citing *Lehigh Mining & Mfg. v. Kelly*, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444 (1895)); *see also Miller & Lux, Inc. v. East Side Canal & Irrigation Co.*, 211 U.S. 293, 302–03, 29 S.Ct. 111, 113–14,

53 L.Ed. 189 (1908) (holding a parent company cannot attempt to create federal diversity by assigning its claim to a subsidiary). Moreover, we note that the presumption serves a useful purpose by aiding in "the difficult task of distinguishing genuine from sham transfers between closely related entities." *Prudential Oil*, 546 F.2d at 475. We thus decline ARC's invitation.

cost-effective process which enables ARC to maximize the collection of funds from [S & N] and to enforce or uphold the integrity of ARC's standards and procedures for accrediting travel agents, controlling the provision of blank ticket stock to approved agents, tracking carrier ticket sales by such agents and collecting the proceeds therefrom.

Although there exists some superficial appeal to these justifications, we find them suspect given the timing of the assignments. ARC did not even request the assignments until after S & N first challenged the district court's subject matter jurisdiction over this case. *See Nike,* 20 F.3d at 992 (obtaining assignments only three days before filing of complaint indicative of collusion). That ARC was not preoccupied with its asserted concerns prior to the prosecution of this litigation speaks volumes towards its true motivation in acquiring the assignments—gaining a federal forum.

ARC, moreover, paid no meaningful consideration for the assignments. Indeed, ARC describes the consideration paid to the air carriers for the assignments as the "provision of a streamlined and cost-effective process for the reporting of carrier transactions by ARC accredited travel agents and the collection of funds generated by such transactions." ARC, however, already provides this service to the air carriers pursuant to the CSA, and the performance of this pre-existing duty cannot suffice as consideration for a valid agreement. *See* 3 *Williston on Contracts* § 7:36, at 569. Further, the CSA requires that any damages recovered in this lawsuit, less costs, be returned to the assignees, indicating nothing of substance was exchanged. *See Kramer,* 394 U.S. at 827, 89 S.Ct. at 1490 (stating that a simultaneous reassignment of a 95% interest in the recovery back to the assignor leads to "little doubt" of collusiveness of assignment).

Any lingering doubts whether ARC acted as it did to obtain a federal forum are dispelled by ARC's own admission that the provision of the assignments by the air carriers was motivated in part by a desire to remain in federal court. *See Airlines Reporting Corp.,* 857 F.Supp. at 1046 (citing ARC's brief filed in the district court). Thus, we find ARC's stated rationale pretextual, as it is nothing more than an attempt to mask the primary purpose of these assignments, namely, the vesting of the court with jurisdiction it formerly did not possess. Accordingly, we agree with the district court that the assignments were collusive in violation of section 1359.

## III.

Having determined that the relevant citizenship for diversity purposes in this case is that of the individual air carriers owed money by S & N, we must determine if the requirements of the diversity statute have been met. As noted, S & N and the individual defendants are citizens of the state of New York. Pan Am, one of the air carriers represented by ARC, maintained its principal place of business in New York at the time the suit was filed, thus rendering it a citizen of New York as well. *See* 28 U.S.C. § 1332(c). Complete diversity therefore does not exist and the complaint must be dismissed. *See Maryland Casualty Co. v. W.R. Grace & Co.,* 23 F.3d 617, 621 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 559 (1994). Additionally, the claim-holding air carriers cannot satisfy the amount in controversy requirement of the diversity statute. *See* 28 U.S.C. § 1332. "When, as here, each of several plaintiffs in a single lawsuit is asserting independent rights, each must independently plead the jurisdictional amount." *Cox v. Livingston,* 407 F.2d 392, 393 (2d Cir.1969) (citations omitted). Only one of the twenty-nine air carriers alleges a claim establishing an amount in controversy in excess of the $50,-000 statutory minimum, the non-diverse Pan Am. None of the other air carriers can satisfy the amount in controversy requirement of section 1332, and as a result we dismiss the complaint on this ground as well. *See Snyder v. Harris,* 394 U.S. 332, 338, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969). Accordingly, we affirm the district court's dismissal of this action in its entirety for lack of diversity jurisdiction.

## CONCLUSION

For the reasons set forth above, we affirm the district court's dismissal of the complaint for lack of subject matter jurisdiction.