Robert R. **DEMPSEY, and Barbara Brookshire Dempsey, Plaintiffs,**

v.

**TRANSOUTH MORTGAGE CORPORATION, and Raintree Realty and Construction, Inc., Defendants.**

No. Civ.1:99CV124.

United States District Court,
W.D. North Carolina,
Asheville Division.

Sept. 15, 1999.

Stephen P. Lindsay, Asheville, NC, for plaintiffs.

Mark A. Pinkston, Michelle Rippon, Asheville, NC, for defendants Transouth.

Marjorie Rowe Mann, Asheville, NC, for defendants Raintree.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Plaintiffs' motions to remand and to

amend the complaint, the Defendant Transouth Mortgage Corporation's (Transouth) motion to dismiss, to stay, and to compel arbitration, and the motion of Defendant Raintree Realty and Construction, Inc. (Raintree) to dismiss.

On June 1, 1999, Baiba Bourbeau filed a 22–page complaint as attorney for the Plaintiffs in the General Court of Justice, Superior Court Division of Polk County, North Carolina, alleging Transouth slandered title to certain property, engaged in fraud in obtaining the execution of certain deeds of trust and promissory notes, and used unfair and deceptive trade practices. The complaint contains no allegations concerning Raintree beyond the allegation of its citizenship. On June 28, 1999, the Defendants removed the action to this Court on the basis of diversity jurisdiction, claiming Raintree is a nominal party. Upon removal, Plaintiffs' attorney Bourbeau could not longer represent them by reason of a consent order entered by this Court on March 6, 1998, suspending Bourbeau's right to practice law before the federal courts of the Western District of North Carolina. Plaintiffs then appeared *pro se* in federal court, and moved to remand their action to state court claiming a lack of diversity based on Raintree's presence and seeking leave to amend the complaint to assert an additional cause of action against Raintree alone. Thereafter on August 24, 1999, Stephen P. Lindsay filed a notice of limited appearance to represent Plaintiffs with respect to the pending motion to remand, motion to dismiss, and motion to amend complaint. No further pleadings have been filed.

■ Jurisdiction is determined, for purposes of diversity jurisdiction, as of the time the complaint is filed in state court. *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). As a result, the Plaintiffs' motion to amend complaint, filed August 12, 1999, and any allegations in the proposed amendment, may not be considered. *Id.*

■ By statute, diversity jurisdiction exists in civil actions involving more than $75,000 between citizens of different states. 28 U.S.C. § 1332(a)(1). A corporation is deemed to be a citizen of the state in which it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Transouth is a South Carolina corporation with its principal place of business in Texas. Raintree is a North Carolina corporation and Plaintiffs are North Carolina residents. However, despite the language of the diversity statute, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). A nominal party has no personal stake in the outcome of the litigation and is not necessary to an ultimate resolution. *Birnbaum v. SL & B Optical Centers, Inc.,* 905 F.Supp. 267, 271 (D.Md.1995). Likewise, a party which is merely a depository is not necessary. *Id.* A party is necessary if, in his absence, complete relief cannot be given. *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.,* 36 F.3d 1274, 1287 (4th Cir.1994). "Necessary parties are those who have or claim material interests in the subject matter of a controversy, and those interests will be directly affected by an adjudication of the controversy." *City of Albemarle v. Security Bank & Trust Co.,* 106 N.C.App. 75, 77, 415 S.E.2d 96, 98 (1992).

■ Raintree is clearly a nominal party at best. Raintree is only a substitute trustee which held title to the land described in the subject deed of trust for the sole benefit of the real parties in interest to this action, they being Plaintiffs and Transouth. Raintree did not have nor does it now have any interest in this suit. *Walden v. Skinner,* 101 U.S. 577, 11 Otto 577, 25 L.Ed. 963 (1879). The complaint contains no factual allegations against Raintree. In fact, it appears that Raintree may have been joined as a defendant solely to defeat diversity jurisdiction. *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232–33 (4th Cir.1993). "[A] joinder is fraudulent

if 'there [is] no real intention to get a[ ] judgment, and ... there [is] no colorable ground for so claiming.' " *AIDS Counseling & Testing Ctrs. v. Group W Television*, 903 F.2d 1000, 1003 (4th Cir.1990). Having determined that foreclosure has been completed and that Raintree has no interest in this action, Raintree's motion to dismiss will be allowed. *See* **Order of Foreclosure** *contained in* **File No: 99 SP 4 and 99 SP 5, General Court of Justice, Superior Court Division of Polk County, North Carolina, filed June 26, 1999;** *see also,* **Defendant Transouth's Motion to Dismiss, to Compel Arbitration, to Stay, Answer and Counterclaim, filed July 26, 1999, at 14.**

Plaintiffs will not be allowed to succeed in such a transparent effort to defeat federal jurisdiction by a belated effort to amend. Plaintiffs' motion to remand and to amend will therefore be denied. Having determined that the case is properly before the Court, the dispositive issue of arbitration will now be addressed.

■ This action arises from a loan transaction involving the execution of a note and deed of trust by Plaintiffs on May 30, 1998, securing payment of a loan from Defendant Transouth in the amount of $376,022. The Plaintiffs failed to make timely payments as same became due and the deed of trust has now been foreclosed under applicable North Carolina law. After foreclosure and by way of counterclaim filed in this action, Transouth seeks recovery of $97,413.59 as the amount due on the indebtedness after applying the proceeds from the sale of the property described in the deed of trust.

At the time of the execution of the subject deed of trust and simultaneously therewith, Plaintiff Robert Dempsey and Transouth executed an arbitration agreement referencing the subject loan transaction. The agreement includes the following language:

In consideration of the mutual promises made in this agreement, you and we agree that either you or we have an absolute right to demand that any dispute be submitted to an arbitrator in accordance with this agreement. If either you or we file a lawsuit, counterclaim, or other action in a court, the other party has the absolute right to demand arbitration following the filing of such action.

\*    \*    \*    \*    \*    \*

This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to:

● your loan from us today;

● any previous loan from us and any previous retail installment sales contract or loan assigned to us;

● all the documents relating to this or any previous loan or retail installment sales contract;

● any insurance purchased in connection with this or any previous loan or retail installment sales contract;

● whether the claim or dispute must be arbitrated;

● the validity of this arbitration agreement;

● any negotiations between you and us;

● any claim or dispute based on an allegation of fraud or misrepresentation, including fraud in the inducement of this or any other agreement;

● any claim or dispute based on a federal or state statute; and

● any claim or dispute based on an alleged tort.

\*    \*    \*    \*    \*    \*

If either party brings a lawsuit, counterclaim, or other action in a court against the other party, the other party can ... demand arbitration of the entire dispute. If arbitration is demanded, ... the entire dispute must be arbitrated in accordance with this agreement and [the] ... other action must be discontinued.

**Exhibit 4, Promissory Note and Arbitration Agreement,** *attached to* **Defendant Transouth's Motion to Dismiss, Motion**

**to Compel Arbitration, Motion to Stay, Answer and Counterclaim, filed July 26, 1999.**

In their 180–paragraph complaint, Plaintiffs allege a variety of misdeeds all ultimately predicated on the loan transaction by designating the causes of action as slander of title, fraud in the inducement of executing the deed of trust signed July 2, 1998, fraud in the inducement of executing the deed of trust and promissory note signed May 30, 1998, and unfair and deceptive trade practices in violation of N.C.Gen.Stat. § 75–1.1. No claim is alleged, however, which escapes the inclusive, all encompassing language quoted above from the Arbitration Agreement signed by the parties.

> The breadth of the language clearly establishes that the arbitration clause was intended to apply to all conflicts between the parties and not only to conflicts regarding [the loan transaction] in particular.... "When the language is unambiguous, the intent of the parties is reflected within the language of the contract and the court will determine the parties' intent from the four corners of the document itself."

*Cara's Notions, Inc. v. Hallmark Cards, Inc.,* 140 F.3d 566, 571 (4th Cir.1998) (internal citations omitted). There is no longer any doubt that federal courts, including the Supreme Court and the Fourth Circuit, have stated their strong preference for arbitration.

> Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: "[A] party cannot be required to submit to arbitration any dispute which it has not agreed so to submit" Nevertheless, the Supreme Court has announced its "healthy regard for the federal policy favoring arbitration" and has explained that the Federal Arbitration Act, 9 U.S.C.A. §§ 1–16[ ] "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiv-

> er, delay, or a like defense to arbitrability."

*American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 92 (4th Cir.1996) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Thus, while the interpretation of the contact is done pursuant to state law, federal substantive law requires the Court to construe that contract in such a manner as to favor arbitration.

> That is, the FAA [Federal Arbitration Act] "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," and that body of federal law requires that, "in applying general state-law principles or contract interpretation to the interpretation of an agreement within the scope of the Act, ... due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."

*McKee v. Home Buyers Warranty Corp. II,* 45 F.3d 981, 984 (5th Cir.1995) (quoting *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24, 103 S.Ct. 927, and *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).

The Act applies to any "written agreement to 'arbitrate in ... a contract evidencing a transaction involving commerce,'" which includes this agreement, and provides in § 2 that the agreement shall be "valid, irrevocable, and enforceable." *Glass v. Kidder Peabody & Co., Inc.,* 114 F.3d 446, 451 (4th Cir.1997) (quoting *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24–27, 103 S.Ct. 927 (quoting 9 U.S.C. § 2)). This section of the Act manifests "Congress's 'liberal federal poli-

cy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *Id.,* at 451–52 (citations omitted). In fact, the Fourth Circuit has declared that the Act "preempts 'conflicting state laws which restrict the validity or enforceability of arbitration agreements.' This proscription, therefore, preempts state laws which either directly contradict federal law or obstruct the realization and execution of Congressional objectives regarding the Act." *Id.,* at 452 (citations and footnote omitted).

However, it is not necessary to apply preemption here because North Carolina law supports Defendant's position. "North Carolina has a strong public policy favoring arbitration." *Red Springs Presbyterian Church v. Terminix Co.,* 119 N.C.App. 299, 303, 458 S.E.2d 270, 273 (1995).

**IT IS, THEREFORE, ORDERED** that Defendant Transouth's motions to stay further proceedings in this case and to compel arbitration are **ALLOWED,** and this matter is hereby **STAYED** to and including January 10, 2000, for completion of arbitration proceedings pursuant to and in accordance with the Arbitration Agreement executed by Robert R. Dempsey and Transouth Mortgage Corporation on May 30, 1998.

**IT IS FURTHER ORDERED** that during the pendency of the stay, the parties shall provide the Court with monthly status reports concerning the progress of such proceedings required by the terms of this Order.

**IT IS FURTHER ORDERED** that the Defendant Transouth's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' motion to remand is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' motion to amend their original complaint is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the Defendant Raintree's motion to dismiss is

**ALLOWED,** and this action is **DISMISSED** in its entirety as to this Defendant.