**NATIONAL ASSOCIATION OF STATE FARM AGENTS, INC.**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., et al.**

No. Civ. CCB–01–CV–3980.

United States District Court,
D. Maryland.

May 22, 2002.

Allan P. Hillman, Neuberger Quinn Gielen Rubin, Baltimore, MD, for Plaintiff.

John L. Burke, Jr., Pau S. Reicher, Lawrence H. Martin, Foley Hoag and Eliot LLP, Washington, DC, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

Now pending before this court is a motion by plaintiff, the National Association of State Farm Agents, Inc. ("NASFA"), to remand this action to state court after its removal by the defendants, State Farm Mutual Automobile Insurance Co., State Farm General Insurance Co., State Farm Fire and Casualty Co., and State Farm Life Insurance Co. (collectively, "State Farm"). Plaintiff asserts that some of its members are citizens of the same state as defendants. Therefore, plaintiff argues that this court is without subject matter jurisdiction due to a lack of complete di-

versity. This matter has been fully briefed and no hearing is necessary. See Local Rule 105.6. For the reasons that follow, the court will grant plaintiff's motion.

## STANDARD OF REVIEW

NASFA has challenged State Farm's removal of this case by filing a motion to remand. Because a federal court's exercise of jurisdiction over a removed case "raises significant federalism concerns," removal jurisdiction is "strictly construe[d]." *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994). See also 28 U.S.C. § 1447(c) (2002) (providing that when a case has been removed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"). The party that has removed the case bears the burden of establishing the court's jurisdiction. See *Mulcahey*, 29 F.3d at 151.

## BACKGROUND

NASFA is a not-for-profit corporation [1] that represents State Farm insurance agents throughout the country in their dealings with the State Farm insurance companies. (Compl. ¶ 3; Hillman Aff. ¶ 2.) In November 2001, NASFA sued State Farm in the Circuit Court for Baltimore County, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relations, *de facto* termination, and violations of the franchise statutes of 15 states, including Maryland. (Compl. ¶¶ 14–84.) Defendants removed the action in

---

1. NASFA is organized as a 501(c)(6) not-for-profit corporation with members rather than shareholders. (*See* Hillman Aff. ¶ 2.) Section 501(c)(6) of the federal tax code exempts from taxation "[b]usiness leagues, chambers of commerce, real-estate boards, boards of

trade, or professional football leagues ... not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual." 26 U.S.C. § 501(c)(6).

December· 2001 pursuant to 28 U.S.C. §§ 1441 and 1446.

NASFA alleges that beginning approximately three years ago, State Farm initiated a series of actions that harmed the agents involved in NASFA, each of which has a contract with State Farm that expires "only upon the death of the individual Agent...." (*Id.* ¶¶ 7, 9.) Among other things, NASFA claims that State Farm attempted to force the agents to affiliate themselves with other agents, required agents to develop a business plan and complete an ethics program, appointed some agents "select agents" and conferred upon them special privileges, imposed fees upon the agents for their customers' use of a State Farm customer service center, and required agents to use this center in order to advertise in the telephone book and use the State Farm logo. (*Id.* ¶ 10(a), (b), (c), (d), (f).) The complaint also alleges that State Farm started selling insurance itself over the Internet, discontinued selling health insurance through the agents, imposed new requirements on agents, and reduced their commissions. (*Id.* ¶ 10(e), (g).) NASFA seeks declaratory and injunctive relief on behalf of the agents. (*Id.* ¶¶ 1–2.)

After removing the case, State Farm moved to dismiss it under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. As their basis for dismissal, defendants alleged that plaintiff does not have standing to assert its agents' claims.[2] NASFA responded by filing two motions: a motion to stay briefing and decision upon State Farm's motion to dismiss complaint and a motion to remand. Only the motion to remand is addressed here.[3]

### ANALYSIS

28 U.S.C. § 1441 permits a defendant to remove an action "brought in a State court of which the district courts of the United States have original jurisdiction...." 28 U.S.C. § 1441(a). The defendants assert that this court has jurisdiction because the controversy is one between citizens of different states. *See* 28 U.S.C. § 1332(a)(1).[4]

The issue on this motion to remand is how plaintiff's citizenship should be determined for jurisdictional purposes. Defendants contend that because NASFA is a corporation, 28 U.S.C. § 1332(c)(1) makes it is a citizen only of its place of incorporation, which is the District of Columbia,[5] and the state of its principal place of business, which is Maryland. (*See* Compl. ¶ 3.) Because all the defendants are citizens of Illinois (*see id.* ¶ 4), State Farm argues that the requirement of complete diversity of citizenship is satisfied. Plaintiff counters that the citizenship of its members,

---

**2.** Although the determination of subject matter jurisdiction in this case is intertwined with issues of plaintiff's standing to bring suit, the court declines to address defendants' argument that plaintiff lacks standing under Maryland law, the law that defendants claim applies in this case. *See, e.g., Smith v. Wisconsin Dep't of Agric., Trade & Consumer Prot.,* 23 F.3d 1134, 1142 (7th Cir.1994) (noting that state standing doctrines are best left to the state courts to explicate). The court also does not reach the separate issue of plaintiff's standing under Article III, which has not been fully briefed.

**3.** The decision on the motion to remand renders moot the motion to dismiss.

**4.** Neither party argues that there is any basis other than diversity upon which this court could assert subject matter jurisdiction over this case. Additionally, the parties do not dispute that the amount-in-controversy requirement of 28 U.S.C. § 1332(a) is satisfied.

**5.** The diversity jurisdiction statute treats the District of Columbia as a state. *See* 28 U.S.C. § 1332(d).

not its corporate citizenship, should control for jurisdictional purposes because it is suing purely as a representative of its members. (*See id.* ¶ 3; Pl.'s Mem. at 3; Hillman Aff. ¶ 3.) As a result, plaintiff claims that the court may not exercise diversity jurisdiction because some of NASFA's members are citizens of Illinois, as are defendants. (*See* Hillman Aff. ¶ 2.)

The question is one of first impression in the Fourth Circuit. Three other circuits and at least one district court, however, have concluded that when a corporation is suing solely as a representative of a real party in interest and not to assert its own rights, diversity jurisdiction must be based on the citizenship of the real parties in interest, not on the citizenship of the corporation. *See Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency, Inc.,* 149 F.3d 794, 797–98 (8th Cir.1998); *Airlines Reporting Corp. v. S & N Travel, Inc.,* 58 F.3d 857, 862 (2d Cir.1995); *Nat'l Ass'n of Realtors v. Nat'l Real Estate Ass'n,* 894 F.2d 937, 940 (7th Cir.1990); *Zee Med. Distrib. Ass'n. Inc., v. Zee Med., Inc.,* 23 F.Supp.2d 1151, 1156 (N.D.Cal.1998).

In *National Ass'n of Realtors,* a not-for-profit corporation that represented real estate agents sued a rival association and several insurance companies, purportedly on behalf of both the agents and the association itself. 894 F.2d at 938. The Seventh Circuit found as an initial matter that the relevant citizenship of a non-share corporation is the same as that of a corporation that issues stock.[6] *See id.* at 939. The court explained, however, that this rule "presupposes that the wrong is to the corporation rather than to the shareholders or members directly." *Id.* By contrast, when the harm is to the members of the corporate association, the members are the

real parties in interest and their citizenship controls for diversity purposes. *See id.* at 939–40. Were the rule otherwise, the court explained, an aggrieved person could circumvent the limits of diversity jurisdiction by retaining an incorporated association of which he was a member to sue on his behalf, using it as a "mere conduit" for his grievance. *Id.* "If the [association members] are the ones hurt by the defendants' conduct," the court explained, "they cannot by enlisting their association as their champion break out of the limits of the diversity jurisdiction." *Id.* at 942.

The parties to this case do not dispute that NASFA is suing to assert the contractual and statutory rights of its members, not itself. NASFA's complaint alleges that the contracts defendants have are with "each of NASFA's member Agents" (Compl.¶ 7), not with NASFA as an entity. The contracts assign the agents protected territories, provide the agents with the right to advertise and use State Farm trademarks, discuss payments to the agents, give the agents credit for policies sold, and set forth a review mechanism for agents who have been terminated. (*See id.; see also id.* ¶ 8 (listing additional characteristics of "[t]he agreements between State Farm and the Agents")).) Further, NASFA contends that the harm that underlies its suit was defendants' alleged efforts "to marginalize its *Agents,* to reduce *their* incomes and to unilaterally drive *them* out of business...." (*Id.* ¶ 1.) (emphasis added). NASFA does not assert that State Farm attempted to directly harm or actually did harm NASFA itself. Finally, NASFA has not claimed that any state statute empowers it to sue purely as a representative of its members—in other

---

**6.** The parties to this case have not argued that not-for-profit membership corporations like NASFA should be treated differently than for-

profit corporations with shareholders when the corporation is the real party in interest.

words, to act as a "private attorney general." *See National Ass'n of Realtors*, 894 F.2d at 940–41. Therefore, because NASFA is suing only on behalf of its members, and not to adjudicate any of its own rights, NASFA's members are the real parties in interest to this controversy, and it is their citizenship that should control for diversity jurisdiction purposes.

 This conclusion accords with the "well settled" general principle, in this circuit and elsewhere, that diversity jurisdiction must be based only on the citizenship of the real parties in interest, ignoring the citizenship of merely nominal or formal parties. *Martin Sales & Processing, Inc. v. West Virginia Dep't of Energy*, 815 F.Supp. 940, 942 (S.D.W.Va.1993); *see also Koehler v. Dodwell*, 152 F.3d 304, 308 n. 4 (4th Cir.1998) (dictum) (noting rule in context of a corporation).[7] Parties that are considered nominal are those that have "no personal stake in the outcome of the litigation" and which are "not necessary to an ultimate resolution." *Dempsey v. Transouth Mortgage Corp.*, 88 F.Supp.2d 482, 484 (W.D.N.C.1999).

This principle of considering only the citizenship of real parties to a controversy was set forth by the Supreme Court in *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), which traced the principle to "[e]arly in [Court] history...." *Id.* at 460, 100 S.Ct. 1779. Courts within this circuit have often applied this principle in diversity cases.

*See. e.g., Kidd v. Gilfilen*, 170 F.Supp.2d 649, 652 (S.D.W.Va.2001) (disregarding citizenship of uninsured motorist); *Comm'r of Labor of North Carolina v. Dillard's, Inc.*, 83 F.Supp.2d 622, 630 (M.D.N.C.2000) (finding state commissioner, not employee, to be real party in interest); *Hidey v. Waste Sys. Int'l, Inc.*, 59 F.Supp.2d 543, 546 (D.Md.1999) (holding that lawyer who acted as "mere depository" for funds was nominal party whose citizenship should not be considered for diversity purposes); *State of West Virginia v. Morgan Stanley & Co., Inc.*, 747 F.Supp. 332, 339 (S.D.W.Va.1990) (finding state, not investment board, to be real party in interest).

Further, the rule has been considered relevant even when the entity in question is a corporation. *See. e.g., Dempsey*, 88 F.Supp.2d at 484 (holding that corporation acting as a substitute trustee was a nominal party); *Birnbaum v. SL & B Optical Ctrs., Inc.*, 905 F.Supp. 267, 270–71 (D.Md. 1995) (finding that corporate franchisees who had property interests at stake were not nominal or formal parties who could be ignored for diversity purposes); *Workman v. Nat'l Supaflu Sys., Inc.*, 676 F.Supp. 690, 693 (D.S.C.1987) (holding that corporation that may be liable under state law was not a nominal party, and thus its citizenship in same state as plaintiff destroyed diversity jurisdiction). *But cf. Turnamics, Inc., v. Advanced Envirotech Sys., Inc.*, 54 F.Supp.2d 581, 583 (W.D.N.C.1999) (finding real party in in-

---

7. The Fourth Circuit repeatedly applied this rule to suits involving administrators of estates before the diversity statute was amended in 1988 to add the provision now codified at 28 U.S.C. § 1332(c)(2). *See, e.g., Messer v. Am. Gems, Inc.*, 612 F.2d 1367, 1374 (4th Cir.1980) (finding administrator to be nominal party and holding that beneficiaries' citizenship controlled for diversity purposes); *Bishop v. Hendricks*, 495 F.2d 289, 292–93 (4th Cir.1974) (observing that "[t]o permit the

appointment of a nominal [party] to create federal diversity jurisdiction would clearly run counter to the general policy of viewing the federal courts as tribunals of limited jurisdiction whose subject matter jurisdiction principles should be applied with restraint, and, through its artificial creation of diversity, would represent an improper manufacture of jurisdiction in obvious violation of the purposes of [28 U.S.C.] Section 1359") (internal quotations and citations omitted).

**530**

terest test as stated in *Navarro* inapplicable in the case of a corporate trustee).[8]

Defendants contend that because NASFA is a corporation, the court should not follow *Navarro* and its progeny in determining the real party in interest in this case. Instead, they argue that this court should follow a subsequent Supreme Court decision, *C.T. Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), which they argue undercuts the relevance of *Navarro* to cases involving corporations. They urge the court simply to apply the diversity statute, 28 U.S.C. § 1332(c)(1), to determine plaintiff's citizenship.

Neither *Navarro* nor *Carden* dealt with a corporation, as does this case. *Navarro* involved a Massachusetts business trust. 446 U.S. at 459, 100 S.Ct. 1779. It held that the eight individual trustees who brought suit were real parties to the breach of contract action, and that their citizenship, rather than the citizenship of the trust's beneficial shareholders, therefore should be considered for the purposes of diversity jurisdiction. *See id.* at 465, 100 S.Ct. 1779. In so holding, the Court examined the function of the trustees in holding legal title, managing assets, and controlling the litigation. *See id.*

In *Carden,* by contrast, the Court considered jurisdiction in a suit brought by a limited partnership. 494 U.S. at 186, 110 S.Ct. 1015. It determined that the citizenship of all the partners, general and limited, should count for diversity purposes without regard to the roles the partners played in the entity. *See id.* at 195–96, 110 S.Ct. 1015. *Carden* distinguished *Navarro*, stating that *Navarro* "had nothing to do with the citizenship" of the trust as an entity, since the trustees had sued in their own names. *Id.* at 192–93, 110 S.Ct. 1015. The Court also found "less than compelling" an argument that *Navarro* required "business reality" to be taken into account "for purposes of determining whether an artificial entity is a citizen" just because business reality is considered "for purposes of determining whether a trustee is the real party to the controversy...." *Id.* at 192, 110 S.Ct. 1015. Additionally, the Court distinguished the questions presented in the two cases, stating that *Navarro* "did not involve the question whether a party that is an artificial entity other than a corporation [9] can be considered a 'citizen' of a State, but the quite separate question whether parties that were undoubted 'citizens' ... were the real parties to the controversy." *Id.* at 191, 110 S.Ct. 1015. It is that "quite separate question"—not decided in *Carden*—that is at issue here.[10]

---

**8.** *Turnamics* appears to be in tension with *Dempsey,* which was decided approximately three and a half months after *Turnamics* by the same judge. Without attempting to resolve this tension, the court notes that *Turnamics* did not involve a party that had a merely nominal or formal interest, but rather a corporate trustee who actually owned the stock at issue in the case. *See* 54 F.Supp.2d at 583. Additionally, far from suggesting that the citizenship of nominal or shell corporations should count for diversity purposes, *Turnamics* inquired into whether the corporate trustee was merely a nominal party with "no stake in the outcome of the litigation," indicating that in such a circumstance the corpo-

rate trustee's citizenship would be disregarded. *See id.* at 585.

**9.** The Court had, earlier in its opinion, reviewed case law that clearly establishes that a corporation is a legal "citizen." *Carden,* 494 U.S. at 189, 110 S.Ct. 1015.

**10.** Similarly, *New York State Teachers Ret. Sys. v. Kalkus,* 764 F.2d 1015 (4th Cir.1985), cited by defendants, merely presaged *Carden* and does not suggest a corporation without a real interest in a dispute must be considered for diversity purposes. *Kalkus* held that the citizenship of all partners in a limited partnership should be considered for jurisdiction-

Just as *Carden* does not dictate the result in this case, neither does the diversity statute. It is undisputed that the statute establishes the general rule that corporations are "citizens" of the states where they are incorporated and principally operate. *See* 28 U.S.C. § 1332(c)(1). The statute, however, does not suggest that this determination should be made without regard to the deeply entrenched rule that only the citizenship of real parties in interest is relevant for diversity purposes. *See, e.g.,* 13B Charles Alan Wright et al., *Federal Practice & Procedure* § 3606 (2d ed.1984) (collecting cases). The diversity statute is silent on the application of this long-standing background rule to all disputes, and cannot be read through its silence to have abrogated the rule. Thus, neither *Carden* nor the statute require this court to mechanically consider the plaintiff a citizen of its states of incorporation and principal place of business while ignoring that the contract rights it asserts are those of its members, not itself.

That *Carden* and the diversity statute can be harmonized with *Navarro* and the real-party-in-interest rule is illustrated by the Second Circuit in *Airlines Reporting,* 58 F.3d at 861. The Second Circuit cited *Carden* and the statute in noting that "courts treat corporations as entities hav-

ing the status of citizens." *Id.* The court also noted, however, that corporate status "does not end the jurisdictional inquiry" in all cases. *Id.* Rather, the court still should apply the rule stated in *Navarro* to determine whether the corporation is a real and substantial party to the controversy. *See id.* If the corporation is merely suing or is being sued in a "representative capacity," then "its legal status is regarded as distinct from its position when it operates in an individual capacity," and "the citizenship of the represented individuals controls for diversity purposes, as they are the real and substantial parties to the dispute." *Id.* at 862.[11]

Because NASFA is suing only as a representative of its members, and not to adjudicate any of its own rights, NASFA's members and not NASFA are the real parties in interest to this controversy. It is thus the members' citizenship that should be considered for the purpose of determining diversity jurisdiction. Since at least one of NASFA's members is a citizen of Illinois, as are defendants, complete diversity is lacking and this court cannot exercise subject matter jurisdiction. Accordingly, the motion to remand will be granted.[12]

A separate order follows.

al purposes. *Id.* at 1019. Like *Carden* and unlike this case, *Kalkus* did not involve a named party that was merely a representative of others' interests.

**11.** Neither of the other two circuits that have considered the question involved in this case discussed *Carden.* The Eighth Circuit did not cite *Carden* in *Associated Insurance,* in which it ignored the citizenship of a corporation acting under a power of attorney as a collection agent for two other corporations that were the real parties in interest. 149 F.3d at 797–98. Although *National Association of Realtors* pre-dated *Carden* by several weeks, the Seventh Circuit has since reiterated, in a

case involving a not-for-profit corporation, that "the citizenship of the real party in interest is determinative when deciding whether the district court has diversity jurisdiction." *CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n,* 230 F.3d 342, 346 (7th Cir.2000). *CCC* also does not cite *Carden.*

**12.** Because this motion has raised a complex question, and there is no evidence of bad faith, the court will not award plaintiff costs and expenses under 28 U.S.C. § 1447(c). *See In re Lowe,* 102 F.3d 731, 733 n. 2 (4th Cir.1996); *Brown v. Washington/Baltimore Cellular, Inc.,* 109 F.Supp.2d 421, 424 n. 2 (D.Md.2000).

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **OR-DERED** that:

1. Plaintiff's motion to remand is **Granted;**

2. Defendants' motion to dismiss is **Denied** as moot;

3. Plaintiff's motion to stay briefing and decision upon defendants' motion to dismiss is **Denied** as moot;

4. This case is **CLOSED;**

5. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record; and

6. A certified copy of this Order shall be mailed to the clerk of the Circuit Court for Baltimore County.