**Michael BIRNBAUM**

v.

**SL & B OPTICAL CENTERS, INC., et al.**

**Civ. No. L–95–757.**

United States District Court, D. Maryland.

Nov. 13, 1995.

Arnold M. Weiner, Baltimore, Maryland, for plaintiff.

Charles R. Claxton, Washington, D.C., for defendants SL & B Optical Centers, Inc., BL & S Optical Centers, Inc., LS & V Optical Centers, Inc., Steven R. Laffey, and Gregory L. Short.

Pamela A. Bresnahan and Steven R. Becker, Washington, D.C., for defendants C. Christopher Wolfe and the Law Offices of Kidder & Wolfe.

James H. Hulme and Nancy Susan Appel, Washington, D.C., for defendant D.O.C. Optics Corporation.

## MEMORANDUM

LEGG, District Judge.

Before the Court is plaintiff's motion to remand. Plaintiff originally filed this suit in the Circuit Court for Anne Arundel County. Defendants petitioned for removal of the case on the basis of diversity of citizenship (28 U.S.C. § 1332). In order to determine jurisdiction over the matter, the Court must decide whether three of the defendants, who are Maryland citizens, have been fraudulently joined, or are nominal or formal parties.

*FACTS*

Prior to 1987, Michael Birnbaum owned and operated a optometry practice and optical retail store in Security Square Mall, located in Baltimore County, Maryland. At the encouragement of the mall's management, Birnbaum, in March of 1987, sought to become affiliated with a national chain of optical retail stores. He contacted D.O.C. Optics Corporation ("D.O.C."), a national chain incorporated in Delaware, and through it was placed in contact with Steven Laffey and Gregory Short.

Laffey, D.O.C.'s vice president for real estate, construction, and leasing, and Short, a building and remodeling specialist for D.O.C., met with Birnbaum to discuss the establishment of several franchises in the Baltimore area. Laffey, Short, and Birnbaum entered into an agreement to form three corporations: LS & B Optical, Inc., SL & B Optical,

Inc., and BL & S Optical, Inc. (the "Franchisees"). The purpose for creating the Franchisees was as follows: LS & B Optical, Inc. was to convert Birnbaum's existing business into a franchise; SL & B Optical, Inc. was to operate a franchise in the Annapolis Mall; and BL & S Optical, Inc. was to open and operate a franchise in the Eastpoint Mall.

The formation of the Franchisees was facilitated by Christopher Wolfe, a Michigan attorney, and his law office, Kidder & Wolfe. Laffey, Short, and Birnbaum each own one-third of the outstanding stock in each of the Franchisees. Although the Franchisees are incorporated in Michigan, it is uncontested that their primary place of business is Maryland. Over the past eight years, Birnbaum has made contributions to the Franchisees including the goodwill and patient records of his previous optical business, personal services, and cash loans. The aggregate value of his contributions total over $450,000. Compl. ¶ 16.

In 1987 and 1988, Laffey, Short, and Birnbaum entered into three Stock Redemption Agreements ("the Agreements"), which provided for the purchase by each Franchisee of its stock under certain circumstances such as the death or termination of a stockholder. The Agreements provide for significantly higher compensation should a shareholder be involuntarily terminated rather than voluntarily leave. Wolfe and his firm were instrumental in the drafting of this Agreement.

Birnbaum has alleged that, from the Franchisees' inception, defendants Wolfe, Kidder & Wolfe, Laffey, Short, and D.O.C. (the "non-franchisee defendants") conspired to manipulate and misuse the Franchisees, in violation of defendants' fiduciary and contractual duties to the plaintiff. Compl. ¶ 24. Among the oppressive acts alleged by plaintiff are: 1) the covert diverting of corporate funds to defendant Laffey for the purpose of repaying outstanding loans (Compl. ¶ 37); 2) the imposition of a hostile work environment upon Birnbaum; 3) the negotiation of the sale of one or more of the Franchisees without the knowledge or consent of plaintiff (Compl. ¶ 40); 4) the denial of plaintiff's access to the Franchisees' records (Compl. ¶ 41); and 5) the manipulation of the Franchisees' records to show that the contributions of Laffey and Short were loans, entitled to preferential treatment in the event of sale or liquidation of the Franchisees, while Birnbaum's contributions were recorded as capital contributions to be repaid only after Laffey and Short had been paid, if there were funds remaining. (Compl. ¶ 42).

On February 13, 1995, Birnbaum filed this suit in the Circuit Court for Anne Arundel County. Defendants filed a notice of removal on March 15, 1995, alleging federal jurisdiction based on diversity of citizenship. Plaintiff has moved to remand.

## DISCUSSION

At issue is whether several Maryland defendants were fraudulently joined or are nominal or formal parties to this suit. In order for this Court to have diversity jurisdiction, all of the defendants must be residents of states different from that of the plaintiff and the amount in controversy must be over $50,000. 28 U.S.C. § 1332(a) & (b). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447.

Although it is undisputed that the amount in controversy is over $50,000, plaintiff, a Maryland citizen, contends that three of the defendants, the Franchisees, are also Maryland citizens and therefore, this Court lacks original jurisdiction. Although defendants admit that the Franchisees are Maryland citizens under 28 U.S.C. § 1332, they allege that the Franchisees have been fraudulently joined, or in the alternative, are formal or nominal parties and therefore, should not be considered as parties for the purpose of determining jurisdiction.

## I. FRAUDULENT JOINDER

■ "In order to establish that a nondiverse defendant has been fraudulently joined, the moving party must establish either: 1) [ ] there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or 2) [ ] there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232

(4th Cir.1993) (citing *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981)). It is "Congress' clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Id.*

Defendants do not contend that there was outright fraud in plaintiff's pleadings. They, therefore, must show that plaintiff cannot establish a claim against the nondiverse defendants, even after resolving all issues of fact and law in plaintiff's favor. *Id.* at 232–34 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992).

■ Plaintiff pleads, in count III, that defendants, as majority shareholders, acted in a manner that was willfully unfair and oppressive to Birnbaum and that he is entitled to the dissolution of the Franchisees. Maryland Corporation and Association Article § 3–413(b)(2) ("Article § 3–413(b)(2)") provides as follows:

> Any stockholder entitled to vote in the election of directors of a corporation may petition a court of equity to dissolve the corporation on the grounds that:.... (2) The acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent.

In order to state a cause of action under Article § 3–413(b)(2), Birnbaum must allege that the majority shareholders acted in manner that appeared to involve self-dealing.[1]

In his complaint, Birnbaum alleges that Laffey and Short manipulated the Franchisees to their benefit and to his disadvantage. Specifically, Laffey and Short allegedly doctored the Franchisees' records in order to provide themselves with preferential treatment in the event of a Franchisee's sale or liquidation, and then purposely concealed these records from Birnbaum. Moreover,

defendants conspired to create a hostile environment in order to force Birnbaum's voluntary termination. Resolving all issues of fact and law in plaintiff's favor, such allegations are sufficient to establish that the majority shareholders acted in furtherance of their own personal interests separate from the interests of the corporation. Thus, under *Valerino*, plaintiff has stated a cause of action under Article § 3–413(b)(2) which could merit the dissolution of the Franchisees.[2]

■ Defendants argue that no wrongdoings were specifically alleged against the Franchisees, and therefore, no cause of action is directly stated against the Franchisees. Maryland courts, however, have long recognized that corporations, as well as the majority shareholders, are proper defendants in a suit for dissolution based on the oppression of a minority shareholder. *See Ettridge v. TSI Group, Inc.*, 314 Md. 32, 548 A.2d 813 (1988) *Lerner v. Lerner*, 306 Md. 771, 511 A.2d 501 (1986); *Murray–Baumgartner Surgical Instrument Co. v. Requardt*, 180 Md. 245, 23 A.2d 697 (1942). Birnbaum, therefore, has properly named the Franchisees as defendants to this action. Because Birnbaum has stated a viable cause of action against the Franchisees, the Court finds that the Franchisees have not been fraudulently joined. *Marshall*, 6 F.3d at 232.

## II. NOMINAL OR FORMAL PARTIES

■ Although not fraudulently joined, the Franchisees may be ignored for the purposes of determining diversity jurisdiction, if they are merely formal or nominal parties. *Navarro Savings Assoc. v. Lee*, 446 U.S. 458, 460–61, 100 S.Ct. 1779, 1781–82, 64 L.Ed.2d 425 (1980). "The test of whether or not a

---

1. Where directors or shareholders act in such a way to use their positions to advance their own individual interests as distinguished from that of the corporation or acquire interests that may conflict with the clear and proper discharge of their duties that transaction is not ipso facto void but conversely it is not necessary to establish that there has been actual fraud practiced by the party holding the confidential or fiduciary relationship. The proof is upon that director or shareholder once it is shown that he has dealt in a way to perfect his

own interest to show the fairness and adequacy of the transaction. In other words, the burden of going forward shifts.
*Valerino v. Little*, 62 Md.App. 588, 602, 490 A.2d 756 (1985) (quoting *Lynch v. Buchanan*, 37 Md. App. 413, 377 A.2d 592).

2. Although not specifically requested in count III, plaintiff requests, in paragraph one of the complaint, the dissolution of the Franchisees.

named defendant is a nominal party is if 'his role in the law suit is that of a depository or stakeholder.' " *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen & Asst. Local 349,* 427 F.2d 325, 327 (5th Cir.1970) (citations omitted).[3] Thus, although a nominal party may possess the object of the litigation, it does not have a personal interest in who wins the suit. Conversely, a party whose personal interests are directly and substantially affected by the outcome of a suit, is not a nominal or formal party.

Defendants argue that because the Franchisees are not parties with substantial interests in the instant case, but merely the subjects of the dispute, they are nominal parties. The Maryland Court of Appeals, however, has held that a corporation has a personal interest in a suit and is a necessary party, where conflicting claims of shareholders, in a closed corporation, have a direct effect upon the its property rights. *Martin v. Carl,* 213 Md. 564, 568, 132 A.2d 601 (1957).[4]

Because the property interests of the Franchisees are at stake in this suit, they cannot be considered nominal or formal parties. Although the allegations of wrongdoings in count III are not directed at the Franchisee defendants, the resolution of the claim could result in their dissolution. The Franchisees are more than mere stakeholders in the instant suit. They have a strong personal interest in the outcome of the case and thus, the Court must regard the Franchises as more than "formal or nominal" parties. Because the Franchisees are neither fraudulently joined nor are nominal or formal parties, the Court finds that it lacks jurisdiction over this suit and must grant plaintiff's motion to remand.

3. Examples of nominal or formal parties include trustees, depositories, or agents. *See e.g. Navarro,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425; *Salem Trust Co. v. Manufacturers' Fin. Co.,* 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628 (1924); *Matchett v. Wold,* 818 F.2d 574 (7th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 230, 98 L.Ed.2d 189 (1987).

4. In *Martin,* minority shareholders brought an action against majority shareholders alleging that the defendants had mismanaged the corpo-

### CONCLUSION

For the reasons stated above, plaintiff's motion for remand will be GRANTED by a separate order.

ration's business and were concealing from the minority shareholders the corporate books and business records. *Id.* On appeal, the majority shareholders contended that the corporation was improperly added as a party plaintiff. The Court of Appeals held that "[t]here can be no doubt that the corporation was a necessary party. Its property rights were affected as a result of the confusion caused by the conflicting claims of the majority and minority stockholders." *Id.* at 568, 132 A.2d 601.