**James S. BURNS, et al.**

v.

**Peter FRIEDLI, et al.**

**No. CIV.A. CCB–02–1649.**

United States District Court,
D. Maryland.

Jan. 10, 2003.

Adam L. Perlman, Williams and Connolly LLP, Washington, DC, for plaintiff.

Gregg L. Bernstein, Kristin Elizabeth Blumer, Martin, Snyder and Bernstein PA, Richard M. Franklin, Hillary P. Krantz, Baker and McKenzie, Chicago, IL, Brent J. Gurney, Robert F. Hoyt, Michael R. Klein, IJay Palansky, Wilmer, Cutler and Pickering, Washington, DC, John W. Polk, Rachael Ellen Schwartz, Jennifer Ancona Semko, Marc Bruce Tucker, Baker and McKenzie, Washington, DC, for defendants.

### *MEMORANDUM*

BLAKE, District Judge.

Now pending before the court are plaintiffs' motion to remand and defendants' motions to dismiss. The motions have been fully briefed and oral argument was held on November 22, 2002. A brief description of the case is as follows.

Defendant Osiris Therapeutics, Inc. ("Osiris") is a commercial stem cell company established in 1992 that focuses on "cellular therapeutic products for the regeneration and restoration of damaged and diseased tissue." (Compl. at ¶¶ 1, 27, 30). Plaintiff James S. Burns ("Burns") is a founder and former president and chief executive officer of Osiris. (*Id.* at ¶ 27). Burns sued Osiris, MSC Regenos AG ("MSC–R"), the parent company of Osiris, and Peter Friedli ("Friedli") and Max Link ("Link"), directors of Osiris and MSC–R, both derivatively and on behalf of a class comprised of the minority shareholders of Osiris and MSC–R. (*Id.* at ¶¶ 1–2, 5–7, 11, 28–29). The complaint alleges, in sum, that Friedli and Link engaged in a number of unlawful transactions for their own personal gain and at the expense of Osiris and its minority shareholders. (*Id.* at ¶¶ 1–3). Specifically, they are accused of "extract[ing] large sums of money from Osiris in the form of various 'fees,' consulting contracts, and inflated expense reimbursements," "deliberately and repeatedly precipitat[ing] financial crises at the company to enable [them] and affiliated organizations to gain a stranglehold over the company," "engag[ing] in unlawful self-dealing," "consummat[ing] an unlawful merger calculated to squeeze out minority shareholders," and "conceal[ing] material information from their fellow Osiris directors and shareholders." (*Id.* at ¶ 2; *see also, id.* at ¶¶ 35–73).

As stated, the complaint includes both derivative and class claims. Counts I through IV are derivative claims (breach of fiduciary duty of care, breach of fiducia-

ry duty of loyalty, breach of fiduciary duty of good faith, and breach of fiduciary duty of disclosure), while Counts V through X are class claims (common law fraud, negligent misrepresentation, breach of fiduciary duty of care, breach of fiduciary duty of loyalty, breach of fiduciary duty of good faith, and breach of fiduciary duty of disclosure). (*Id.* at ¶¶ 74–121).

Burns brought this action in the Circuit Court for Baltimore City (*see* Compl.), but the defendants removed it to this court on the basis of diversity jurisdiction (*see* Notice of Removal).[1] Burns is a citizen of Maryland, MSC–R is a Swiss entity, and Friedli and Link are citizens of Switzerland. (Compl. at ¶¶ 4–7). Osiris is a Delaware corporation with its principal place of business in Maryland. (*Id.* at ¶ 8). For jurisdictional purposes, therefore, Defendant Osiris, like Plaintiff Burns, is a citizen of Maryland. *See* 28 U.S.C. § 1332(c).

Accordingly, plaintiffs move to remand the case to state court. (*See* Pls.' Mot. to Remand). The defendants contend, by way of opposition memoranda and motions to dismiss, that Osiris was fraudulently joined as a defendant to defeat diversity jurisdiction. (*See, e.g.,* Osiris's Mot. to Dismiss). According to the defendants, the complaint does not state valid derivative or class claims against Osiris, and, thus, the case should be dismissed as against it and this court should exercise jurisdiction over the matter. (*Id.*).

As the Fourth Circuit has explained, a removing defendant seeking to show fraudulent joinder "must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'"

*Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir.1999) (*quoting Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir.1993) (emphasis in original)). As there is no claim of outright fraud in this case, the defendants bear the "heavy burden" of showing that the plaintiffs cannot establish a claim against the non-diverse defendant Osiris "even after resolving all issues of law and fact in the plaintiff[s'] favor." *Hartley,* 187 F.3d at 424 (*citing Marshall,* 6 F.3d at 232–33). "[U]ltimate success is not required to defeat removal. Rather, there need be only a slight possibility of a right to relief" to warrant remanding the case to state court. *Hartley,* 187 F.3d at 426 (internal citations omitted). This standard is even more favorable to plaintiffs than the one used to evaluate motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id.* at 424.

*Class claims*

▮ Defendants advance two arguments to support their contention that plaintiffs cannot state any class claims against Osiris. First, defendants assert that the complaint does not contain any bona fide class claims (as distinguished from derivative claims) because the plaintiffs failed to allege any individual harm. (*See* Friedli's Mot. to Dismiss at 9–12; Friedli's Reply Mem. at 9–10; Link's Mot. to Dismiss at 6–7). Second, defendants submit that Osiris is not a necessary party to the class claims, which seem to be directed against Friedli and Link. (*See* Osiris's Mot. to Dismiss at 9–11; Osiris's Mem. in Opp. to Pls.' Mot. for Remand at 10–13).

Regarding the first argument, defendants maintain that in order to sustain a cognizable class claim, a plaintiff "must

---

1. Defendant Osiris filed a notice of removal on May 8, 2002. (*See* Docket No. 1). That notice was subsequently joined by Friedli (Docket No. 16), Link (Docket No. 24), and MSC–R (Docket No. 30).

'allege more than an injury resulting from a wrong to the corporation;' he must plead [a] 'special injury'... unique to the individual shareholder." (Friedli's Mot. to Dismiss at 10) (*quoting Kramer v. W. Pac. Indus., Inc.,* 546 A.2d 348, 351–52 (Del. 1988)).[2] In *Kramer,* 546 A.2d at 353, the Supreme Court of Delaware explained that a claim of mismanagement resulting in an overall depression of stock value is properly brought as a derivative action because such devaluation is "a wrong to the corporation; i.e., the stockholders collectively." Contrarily, a plaintiff who "directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation," and, thus, may maintain direct class claims. *Parnes v. Bally Entm't Corp.,* 722 A.2d 1243, 1245 (Del.1999) (*citing Lewis v. Anderson,* 477 A.2d 1040, 1046, n. 10 (Del.1984)). To state a valid class claim challenging a merger, plaintiffs "usually... charg[e] the directors with breaches of fiduciary duty resulting in unfair dealing and/or unfair price." *Parnes,* 722 A.2d at 1245 (*citing Kramer,* 546 A.2d at 354).

Plaintiffs' complaint makes numerous allegations that the merger of Osiris with and into a wholly-owned subsidiary of MSC–R was tainted by an unfair process. (*See, e.g.,* Compl. at ¶¶ 2, 35, 41–44 (alleging that Friedli, as a director and investor of Osiris, extracted extraordinary financing terms from the company, including the right of first refusal on any new equity or debt financing and the right to veto any capital expenditure or contract in excess of $500,000); *id.* at ¶¶ 43–52 (claiming that Friedli, with Link's assistance, used these terms to "obtain a stranglehold on Osiris" and to deliberately undercapitalize the company, precipitating financial crises);

*id.* at ¶¶ 53–62 (averring that Friedli then brokered an improper "bridge loan" between Osiris and an entity controlled by himself, and when Osiris could not repay the entire $11 million note just five weeks later, Friedli obtained Osiris stock at a reduced price, enabling him to increase his stock holdings measurably); *id.* at ¶¶ 63–67 (alleging that as a result of Friedli's increased stock holdings and his false representations to the Osiris board, Osiris was merged into a wholly-owned subsidiary of MSC–R, another corporation in which Friedli and Link serve as directors)).

The complaint also alleges that the merger resulted in an unfair price for the minority shareholders to the benefit of Friedli and Link. (*See, e.g., id.* at ¶¶ 68, 71–72 (claiming that two different exchange regimes were employed, whereby Friedli and Link tendered Osiris stock and received MSC–R stock at a 9–to–1 ratio, while the other shareholders exchanged stock at a 12–to–1 ratio); *id.* at 68 (alleging that Friedli, unlike the other shareholders, also received cash in exchange for Osiris shares)).

Resolving all issues of law and fact in the plaintiffs' favor, there is a possibility that they could maintain direct class claims against Osiris in state court. As noted by the *Parnes* court, the facts developed during the course of litigation "may cast a very different light on the merger and the... directors' decisions." 722 A.2d at 1247. At this stage, however, plaintiffs have adequately pled that directors Friedli and Link breached their fiduciary duties, resulting in both unfair dealing and unfair price with respect to the merger, which is sufficient to sustain class claims as distinguished from derivative ones.

**2.** The parties agree that Delaware substantive law governs this matter. (*See* Osiris's Mot. to Dismiss at 5, n. 3; *see also,* Compl. at ¶ 1).

■ Concerning the second argument, defendants contend that the class claims, as drafted in the complaint, implicate Friedli and Link, not Osiris. (Osiris's Mem. in Opp. to Pls.' Mot. for Remand at 10–13). Furthermore, according to the defendants, Osiris is not a necessary party to the action pursuant to Rule 19(a) of the Federal Rules of Civil Procedure because all of the requested remedies would be supplied by defendants Friedli, Link, and MSC–R only. (*Id.*).

Rule 19(a) states, in pertinent part, that a party is needed for just adjudication if "complete relief cannot be accorded" or if the party's ability to protect its interest in the subject of the action would be impaired or impeded in its absence. FED. R. CIV. P. 19(a). The court in *Birnbaum v. SL & B Optical Ctrs., Inc.*, 905 F.Supp. 267, 270–71 (D.Md.1995), added that "a corporation has a personal interest in a suit and is a necessary party, where conflicting claims of shareholders, in a closed corporation, have a direct effect upon its property rights" (*citing Martin v. Carl*, 213 Md. 564, 132 A.2d 601, 603 (1957)).

The complaint seeks various remedies, including orders rescinding the conversion of Osiris stock arising from the bridge loan transaction, rescinding the merger between Osiris and a wholly-owned subsidiary of MSC–R, removing Friedli and Link from the Osiris board, and preventing Osiris from entering into any commercial relationship or merger that could be voted on by Friedli, Link, or their affiliates. (*See* Compl. *Ad Damnum*). It, thus, is plain from the face of the complaint that Osiris has interests that may be "directly and substantially affected by the outcome" of the suit. *Birnbaum*, 905 F.Supp. at 271. Moreover, it appears that the remedies requested, particularly the aforementioned injunctive relief, may not be accorded in Osiris's absence. *See also, Derry*

*Fin. N.V. v. Christiana Cos., Inc.*, 102 F.R.D. 892, 895–96 (D.Del.1984) (holding that all parties to a contract are necessary parties if rescission is sought).

In their memorandum in opposition to plaintiffs' motion to remand, defendants acknowledge the holding of *Birnbaum*, but proceed to argue that it "has been applied in only one other case, forty-five years ago..." (Osiris's Mem. in Opp. to Pls.' Mot. for Remand at 12, n. 13). Be that as it may, the court, mindful of its directive to resolve all issues of law and fact in the plaintiffs' favor, finds there is a possibility that Osiris is a necessary party to the class claims.

*Derivative claims*

■ Defendants maintain two arguments to support their belief that plaintiffs cannot state any derivative claims against Osiris. First, defendants assert that plaintiffs have no standing to bring a derivative suit on behalf of Osiris because they are no longer shareholders of Osiris. (*See* Osiris's Mot. to Dismiss at 5–6; Osiris's Mem. in Opp. to Pls.' Mot. for Remand at 2–5). Second, defendants posit that plaintiffs' derivative claims fail because the complaint does not allege that the Osiris board wrongfully refused plaintiffs' demand. (*See* Osiris's Mot. to Dismiss at 7–9; Osiris's Mem. in Opp. to Pls.' Mot. for Remand at 5–9).

Preliminarily, the parties seem to agree that Osiris is antagonistic to plaintiffs' claims. (*See, e.g.,* Pls.' Mot. to Remand at 12–15; Osiris's Mem. in Opp. to Pls.' Mot. for Remand at 2–3 (averring that the doctrine of antagonism is a moot point in this case); *see also, Khoury v. Oppenheimer*, 540 F.Supp. 737, 739 (D.Del.1982) (defining the doctrine as when "the corporation is under the control of management which is antagonistic to the plaintiff shareholders")). Since defendant Osiris is clearly antagonistic to plaintiffs' claims (*see, e.g.,*

Osiris's Mot. to Dismiss), it is properly aligned as a defendant in this derivative action. *Khoury*, 540 F.Supp. at 739 (*citing Smith v. Sperling*, 354 U.S. 91, 95–97, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957) (holding that antagonistic corporations are aligned as defendants in derivative suits)).

In connection with the first argument, defendants state that upon Osiris's merger with a wholly-owned subsidiary of MSC–R, plaintiffs and all other shareholders ceased to own stock in Osiris. (Osiris's Mot. to Dismiss at 5). Since plaintiffs pursuing derivative claims must maintain shareholder status throughout the litigation, defendants argue, plaintiffs have no standing to assert derivative claims against Osiris. (*Id.* at 5–6) (*citing Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del.1984)).

Plaintiffs respond that they have standing to pursue derivative claims, even if they are no longer shareholders of Osiris, because of a recognized exception to the general rule invoked by defendants and enunciated in *Lewis*. (*See* Pls.' Opp. to Osiris's Mot. to Dismiss at 15–17; Pls.' Reply in Supp. of their Mot. to Remand at 6–9) (*citing Schreiber v. Carney*, 447 A.2d 17 (Del.Ch.1982)). In *Schreiber*, the Court of Chancery of Delaware held that a plaintiff had standing to bring a derivative suit challenging alleged breaches of fiduciary duties, despite the fact that the plaintiff was no longer a shareholder of the corporation as a result of a merger, because "the merger had no meaningful effect on the plaintiff's ownership of the business enterprise." *Id.* at 22. The court focused on the "virtually identical" structure of the corporation before and after the transaction, which was a "share for share merger with a newly formed holding company, which retained the old company as a wholly-owned subsidiary of the new holding company with the shareholders of the old company owning all the shares of the new

holding company." *Id.* Furthermore, the *Schreiber* court emphasized that permitting the plaintiff to pursue a derivative action in that case comported with the policy behind the general rule limiting standing to those with shareholder status throughout the litigation: "to prevent the evil of the purchasing of shares for the purpose of bringing a derivative action based on transactions antedating the purchase." *Id.* at 21.

In their memoranda, the parties debate whether *Schreiber* is similar to the present case (*see, e.g.*, Pls.' Opp. to Osiris's Mot. to Dismiss at 15–17), or distinguishable from it (*see, e.g.*, Osiris's Mem. in Opp. to Pls.' Mot. for Remand at 4–5). *See also, Lewis*, 477 A.2d at 1046, n. 10 (finding *Schreiber* inapposite because the merger in that case "was clearly not a reorganization resulting in a holding company"); *Schreiber*, 447 A.2d at 22 (noting that Delaware courts have denied standing to plaintiffs who lost shareholder status due to "mergers [that] were either cash-out mergers or mergers with outside or pre-existing corporations with substantial assets"). Additionally, defendants, while acknowledging *Schreiber*, again suggest that it should be disregarded because it has been applied only infrequently by Delaware courts. (Osiris's Mem. in Opp. to Pl.'s Mot. for Remand at 3–4, n. 3).

While the parties differ in their interpretations of *Schreiber*, the court, after resolving every factual and legal issue in favor of the plaintiffs, must note the similarities between *Schreiber* and the present case. First, the Osiris merger shares some characteristics with the merger described in *Schreiber*. In particular, both transactions were mergers of corporations into newly formed holding companies, upon which the old corporations became wholly-owned subsidiaries.[3] *Compare*

---

**3.** Specifically, in *Schreiber*, Texas International-

al Airlines, Inc. was merged into a newly

*Schreiber,* 447 A.2d at 18–19, 22 *and* Compl. at ¶¶ 65–66. In addition, the cases distinguished by the *Schreiber* court involved transactions markedly different from the Osiris merger, namely cash-out mergers or mergers with pre-existing corporations with substantial assets. *Compare* 447 A.2d at 22 *and* Compl. at ¶¶ 65–66, 68. Lastly, a finding that plaintiffs have standing in the present case would not violate the policy articulated in *Schreiber,* as the plaintiffs here did not purchase Osiris stock for the purpose of bringing a derivative action based on activity that occurred prior to the stock purchase. *Compare* 447 A.2d at 21–22 *and* Compl. at ¶¶ 1, 4, 27, 35–73. Accordingly, without deciding the question, the court finds there is a possibility that plaintiffs have standing to assert derivative claims against Osiris pursuant to the exception discussed in *Schreiber.*

◼ Regarding the second argument, defendants submit that the plaintiffs cannot sustain derivative claims against Osiris because the complaint fails to allege that the Osiris board wrongfully refused demand. (*See* Osiris's Mot. to Dismiss at 7–9; Osiris's Mem. in Opp. to Pls.' Mot. for Remand at 5–9) (*citing Grimes v. Donald,* 673 A.2d 1207, 1218–19 (Del.1996), *overruled on other grounds by Brehm v. Eisner,* 746 A.2d 244 (Del.2000)). The Supreme Court of Delaware has explained that if demand is made and rejected, the plaintiff must allege facts with particularity[4] that create "reason to doubt that the board acted independently or with due care in responding to the demand." *Scattered Corp. v. Chicago Stock Exch., Inc.,* 701 A.2d 70, 74 (Del.1997), *overruled on other grounds by Brehm v. Eisner,* 746 A.2d 244 (Del.2000). In pleading wrongful refusal, the plaintiff should state whether the board "was biased, lacked independence, or failed to conduct a reasonable investigation." *Id.* at 75; *see also, id.* at 75, n. 22 (*quoting Aronson v. Lewis,* 473 A.2d 805, 815 (Del.1984)) ("There must be coupled with the allegation of control [or domination] such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person").

Again resolving all issues of law and fact in the plaintiffs' favor, it appears that the complaint alleges with particularity facts pertaining to the Osiris board's bias, lack of independence, control by Friedli and Link, and aversion to conducting a reasonable investigation of the allegations contained in the plaintiffs' demand. (*See* Compl. at ¶¶ 24–25 (stating that demand was made and refused); *id.* at ¶¶ 25, 36, 44, 48–52, 55–56, 67 (alleging that Friedli

formed holding company, Texas Air Corporation; upon conclusion of the transaction, Texas International became a wholly-owned subsidiary of Texas Air. 447 A.2d at 18–19. In this case, Osiris was merged with and into Osiris Acquisition, Inc., a newly formed wholly-owned subsidiary of MSC–R, also a newly formed corporation. (Compl. at ¶¶ 64–66). Upon conclusion of this transaction, Osiris became a wholly-owned subsidiary of MSC–R (not of Osiris Acquisition, Inc.). In addition, pursuant to the merger agreement in *Schreiber,* shareholders of Texas International received one share of Texas Air for each share they had in Texas International. 447 A.2d at 19. While Osiris shareholders also received shares of their ultimate parent company, MSC–R, to effectuate the merger, they did not receive shares at a one-to-one ratio. (Compl. at ¶¶ 68, 70).

4. The plaintiff in *Grimes* failed to allege wrongful refusal with particularity when it "recite[d] the Board's rejection of [the] demand and proceed[ed] to assert why [he] disagreed with the Board's conclusion." 673 A.2d at 1220. The complaint only summarily averred "that the refusal could not have been the result of an adequate, good faith investigation since the Board decided not to act on the demand." *Id.*

and Link exerted control over the board, and that the board was beholden to Friedli and Link because of their financial "stranglehold" over Osiris); *id.* at ¶¶ 25, 44 (averring that the Osiris board is adverse to the plaintiffs and their claims because of Friedli and Link's control over the company); *id.* at ¶¶ 37–40, 61 (claiming that, due to Friedli and Link's control and domination, the Osiris board ignored requests to investigate whether various transactions and the merger were in the best interests of the corporation)). Accordingly, there is a possibility that the complaint adequately alleges wrongful refusal of the demand, enabling plaintiffs to pursue derivative claims against Osiris.

In light of the court's holdings that there is a possibility that the plaintiffs may maintain both class and derivative claims against Osiris, it necessarily follows that Osiris has not been fraudulently joined in this action. Because plaintiff Burns and defendant Osiris are both citizens of Maryland, full diversity is lacking, and the case will be remanded to the Circuit Court for Baltimore City.[5] As defendants' arguments for removal were not unreasonable, however, no costs will be awarded under 28 U.S.C. § 1447(c). *See Parker v. Johnny Tart Enters., Inc.*, 104 F.Supp.2d 581, 585 (M.D.N.C.1999).

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. plaintiffs' motion to remand (Docket No. 13) is **GRANTED**;

2. the case is **REMANDED** to the Circuit Court for Baltimore City;

3. the court lacks jurisdiction to rule on defendants' motions to dismiss (Docket Nos. 9, 26, 36, 39);

4. copies of this Order and the accompanying Memorandum shall be sent to counsel of record; and

5. the Clerk of the Court shall **CLOSE** this case.

---

5. Defendants Link and MSC–R additionally argued in their motions to dismiss that the complaint fails to state a claim against them. (*See* MSC Regenos AG's Mot. to Dismiss at 1–5; Link's Mot. to Dismiss at 2, 7–8). These arguments are irrelevant to the threshold question, which is whether the plaintiffs have fraudulently joined Osiris. In view of the court's resolution of this question and its order to remand the case, the court does not have jurisdiction over these motions to dismiss or that of defendant Friedli.