DEAJESS MEDICAL IMAGING, P.C., et ano., Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

No. 03 Civ.8779 (LAK).

United States District Court, S.D. New York.

Nov. 12, 2004.

Moshe D. Fuld, Law Office of Moshe D. Fuld, P.C., for Plaintiffs.

Harlan R. Schreiber, Tell, Cheser & Breitbart, L.L.P., for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Legal scholars long have questioned the continued desirability of diversity jurisdiction,[1] particularly when it is applied to situations that defy its historical justification.[2] This case is another example of a plaintiff attempting to invoke diversity jurisdiction in a situation entirely inconsistent with the original purposes of the statute.

Plaintiff Deajess Medical Imaging, P.C. ("Deajess") has brought suit against defendant Allstate Insurance Company ("Allstate") seeking payment for medical services that Deajess allegedly provided to 55 persons injured in automobile accidents. The claims are purely local in nature, and none exceeds $3,700. According to the complaint, Deajess, which is the party trying to avoid New York state courts, is a New York resident.[3] Allstate's principal place of business is in Illinois, which is also its state of incorporation.[4]

The complaint alleges that the 55 patient-assignors were injured in accidents involving automobiles covered by Allstate under no-fault insurance policies.[5] They allegedly assigned to Deajess their rights to collect benefits under the policies.[6] Deajess claims that it billed Allstate for the services but never received payment.[7] It seeks an aggregate of $107,608.98 for services rendered to the 55 patients, plus attorneys' fees.[8] A spreadsheet attached to the complaint appears to identify, for each patient-assignor, the patient's name,

1. *E.g., O'Brien v. AVCO Corp.*, 425 F.2d 1030, 1033 (2d Cir.1969) ("The historical rationale for diversity jurisdiction was that out-of-state parties might be subjected to undue prejudice in state courts, and thus ought to be afforded the opportunity to have their cases tried in an impartial forum. The continued validity of [this] argument in a mobile and urban society has been questioned by scholars.") (citation omitted); HENRY J. FRIENDLY, FEDERAL JURISDICTION: A GENERAL VIEW 139–52 (1973); 13B CHARLES ALAN WRIGHT ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE 2D: JURISDICTION § 3601 (2d ed. 1984) ("[I]n a society infinitely more mobile than the one that existed at the time the Constitution was framed, it is difficult to believe that prejudice against a litigant based upon [*sic*] his being a citizen of a different state, is a significant [problem]."). *But see* 15 MOORE'S FEDERAL PRACTICE § 102.03 (3d ed. 2000) (hereinafter "15 MOORE'S") ("It might be responded that the concern over prejudice is today exaggerated because improvements in travel and communication have unified the nation.... The fact remains, however, that state judges are often elected, and therefore are generally more directly tied to the community and its political structures than are their federal counterparts. The possibility of prejudice ..., then, is at least more than fanciful.").

2. *E.g.*, 15 MOORE'S § 102.03 (questioning the rationale that "puzzlingly allows *in-state* plaintiffs to proceed initially in federal court under ... diversity jurisdiction").

3. *Compl.* ¶ 2.

4. *Id.* ¶ 3.

5. *Id.* ¶¶ 6–7.

6. *See id.* ¶ 6.

7. *Id.* ¶¶ 10–12.

8. *Id.* ¶¶ 13–16.

the date of the accident, the claim number, the date of service, and the total cost of services rendered.[9] The claims range in value from $874.44 to $3,625.78, and the accidents occurred between July 3, 2000 and December 18, 2002.[10] There is no allegation that any of the claims are related, although six appear to involve family members injured in the same accident.[11] None of the patient-assignors could have sued in federal court because none has a claim in excess of $75,000, the amount necessary to invoke diversity jurisdiction.[12]

This appears to be one of approximately 30 similar cases that plaintiffs' counsel has filed in this district during the past year and a half.[13] In each, a medical service provider seeks reimbursement from an insurer for services rendered to patient-assignors allegedly injured in automobile accidents. The plaintiff tries invoking federal jurisdiction through aggregation of the claims of unrelated patient-assignors.

Defendant moves to dismiss on the grounds that (1) the claims were improperly or collusively assigned to Deajess for the purpose of creating federal subject matter jurisdiction, or (2) unrelated claims cannot be aggregated to meet the amount in controversy requirement, or, alternatively, that the Court should abstain under *Burford*.

## Discussion

### A. The Assignments Were Not Improper or Collusive

Defendant contends that the assignments were improperly or collusively made for the purpose of creating diversity jurisdiction in violation of 28 U.S.C. § 1359. That statute provides:

> "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."[14]

It has been broadly construed "to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction."[15] The party invoking jurisdiction has the burden of demonstrating that the reason given for the assignment is "legitimate, not pretextual."[16] In assessing whether an assignment is improper or collusive, courts consider, among other things, "the assignee's lack of a previous connection with the claim assigned; the remittance by the assignee to the assignor of any recovery; whether the assignor actually controls the conduct of the litigation; the timing of the assignment; the lack of any meaningful consideration for the assignment; and the underlying purpose of the assignment."[17] No single factor is dispositive.[18]

9. *See* Compl. Attach.

10. *Id.*

11. *See id.*

12. 28 U.S.C. § 1332(a).

13. *See Deajess Med. Imaging, P.C. v. Geico Gen. Ins. Co.*, No. 03 Civ. 7388(DF), 2004 WL 1576536, at *1 (S.D.N.Y. July 15, 2004) (plaintiff's counsel appears to have filed approximately 30 similar cases during prior year); *Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, No. 03 Civ. 3923(RCC), 2004 WL 1586429, at *1 n. 2 (S.D.N.Y. July 15, 2004) ("In the last few years, plaintiff's counsel has inundated the courts in this district with cases involving aggregated assigned claims for no-fault insurance benefits.") (collecting cases).

14. 28 U.S.C. § 1359.

15. *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir.1995) (quoting *O'Brien*, 425 F.2d at 1033).

16. *Id.* at 863.

17. *Id.* (citations omitted).

18. *Id.*

■ When the relevant facts are not in dispute, a court resolving a motion to dismiss for lack of subject matter jurisdiction "must take as true all of the material factual allegations contained in the complaint."[19] Nevertheless, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."[20]

■ Accepting as true the material factual allegations in the pleadings, the Court cannot conclude that the assignments were made improperly or collusively in order to manufacture jurisdiction. The assignments appear to have been for the purpose of enabling Deajess to provide costly medical services to its patients without requiring them to pay out-of-pocket for those services. This practice, which is not uncommon, serves the useful function of making medical services available to patients who otherwise might be unable to pay up front. Moreover, Deajess appears to have obtained the assignments at the time the services were rendered, long before the start of this litigation, and it paid meaningful consideration for them. It controls this litigation and any monies recovered will go directly to it. In the circumstances, the assignments appear to have been made for a legitimate business purpose, not to create federal jurisdiction.[21]

Defendant insists that the assignments were improper or collusive because they were made for collection purposes. It points out that at least some, if not all, of the agreements may have permitted Deajess to seek recovery from the assignors in the event that the claims were not covered by insurance. This argument fails. The relevant inquiry is whether the assignments were made in order to manufacture diversity jurisdiction. There is no indication that they were.

■ Defendant further argues that Section 1359 should be interpreted to prevent the use of assignments to create federal jurisdiction whenever the purposes of diversity jurisdiction would not be served. But this is not the standard set forth in Section 1359. The plain language of the statute looks not to whether the purposes of diversity jurisdiction would be served, but to whether the assignment was made "to invoke the jurisdiction of such court."[22] Indeed, the terms "improper" and "collusive" have been construed "to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction."[23] Accordingly, if an assignment is for a legitimate business reason, then it is not

19. *LeBlanc v. Cleveland,* 198 F.3d 353, 356 (2d Cir.1999) (citing *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998)).

20. *Shipping Fin. Servs.,* 140 F.3d at 131 (citing *Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)).

21. Other courts in this district, in reviewing similar cases brought by plaintiffs' counsel, also have concluded that assignments similar to those here were entered into for a legitimate business reason. *Deajess Med. Imaging, P.C. v. Allstate Ins. Co.,* No. 03 Civ. 3916(LTS), 2004 WL 1920803, at *4 (S.D.N.Y. Aug. 27, 2004); *Boston Post Rd. Med. Imag-ing, P.C. v. Geico Gen. Ins. Co.,* No. 03 Civ. 7390(JCF), 2004 WL 1810572, at *3 (S.D.N.Y. Aug. 12, 2004); *Deajess Med. Imaging PD v. Allstate Ins. Co.,* No. 03 Civ. 3920(RWS), 2004 WL 1632596, at *5 (S.D.N.Y. July 22, 2004); *Deajess Med. Imaging, P.C. v. Geico Gen. Ins. Co.,* No. 03 Civ. 7388(DF), 2004 WL 1576536, at *3–4 (S.D.N.Y. July 15, 2004); *Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.,* No. 03 Civ. 6150(SAS), 2004 WL 830154, at *2–*3 (S.D.N.Y. Apr. 13, 2004).

22. 28 U.S.C. § 1359.

23. *Airlines Reporting Corp.,* 58 F.3d at 862 (quoting *O'Brien,* 425 F.2d at 1034).

improper or collusive under Section 1359.[24]

For these reasons, the Court concludes that the assignments were not improper or collusive under Section 1359.

**B. *Deajess May Aggregate Unrelated Claims to Meet the Amount In Controversy Requirement***

■ The next issue is whether Deajess may aggregate its unrelated claims in order to satisfy the amount in controversy requirement.

■ Rule 18(a) of the Federal Rules of Civil Procedure permits a party to join as many claims as it has against an opposing party. It does not require that the claims be factually related.[25] It is also true that a single plaintiff may aggregate its claims against a single defendant in order to meet the amount in controversy requirement.[26] This is so regardless of whether the claims are factually related.[27] Accordingly, a single plaintiff may join as many claims, related and unrelated, as it has against a single defendant in order to meet the jurisdictional amount. As the Second Circuit explained in *Wolde–Meskel:*

"Since the diversity statute confers jurisdiction over 'civil actions' rather than specific claims alleged in a complaint, a plaintiff is permitted to aggregate claims in order to satisfy the amount in controversy requirement." *See Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (aggregation is permitted in cases in which a single plaintiff seeks to aggregate two or more claims against a single defendant). Aggregation is governed by Fed.R.Civ.P. 18, which allows joinder of any claims against a single defendant. Rule 18(a) provides that:

" 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' "

"There is no requirement that the aggregated claims (between parties) be factually related; claims joined under Rule 18 need not be part of the same

---

**24.** *See Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir.1976); *cf. Bullard v. City of Cisco*, 290 U.S. 179, 188, 54 S.Ct. 177, 78 L.Ed. 254 (1933) (if an assignment is "real and intended to invest the plaintiffs with full title," rather than a "colorable device" to create jurisdiction, then assignee may sue in federal court).

**25.** *See* Fed. R. Civ. P. 18(a); *Wolde Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir.1999).

**26.** *Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (single plaintiff may aggregate two or more claims against a single defendant in order to meet the amount in controversy requirement); *Wolde–Meskel*, 166 F.3d at 62 (same); *cf. Bullard*, 290 U.S. at 188–89, 54 S.Ct. 177 (transferee of bonds and coupons could invoke federal jurisdiction where the transfers were made for a legitimate business purpose,

even though the unaggregated claims were too small to meet the jurisdictional requirement).

**27.** *E.g.*, 14B Charles Alan Wright et al., Federal Practice and Procedure 3D: Jurisdiction § 3704 (3d ed. 1998) (hereinafter "14B Wright") ("In the case of a single plaintiff suing a single defendant, Federal Rule of Civil Procedure 18 permits a litigant to join as many claims as he or she may have against an opponent regardless of the nature or relationship of those claims. When that single plaintiff joins several claims against the defendant, the general rule ... is that the value of all the claims can be added together—aggregated—in determining whether the requisite jurisdictional amount in controversy has been satisfied.") (footnotes omitted); 15 Moore's § 102.108 ("A single plaintiff may aggregate all claims joined under Rule 18, related and unrelated, against a single defendant in calculating the amount in controversy.").

case or controversy as claims over which the court would have independent original jurisdiction. *See* 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3704, at 130 (3d ed. 1998) ('In the case of a single plaintiff suing a single defendant, [Rule 18] permits a litigant to join as many claims as he or she may have against an opponent regardless of the nature or relationship of those claims. When that single plaintiff joins several claims against the defendant, the general rule ... is that the value of all the claims can be added together—aggregated—in determining whether the requisite jurisdictional amount in controversy has been satisfied.').")[28]

Aggregation of Deajess' claims therefore was permissible.

The Court acknowledges defendant's observation that this case does not serve the purposes of diversity jurisdiction. The historical justification for diversity jurisdiction was to protect out-of-state litigants from prejudice thought to be found in state courts. That purpose plainly is not served where, as here, the party invoking federal jurisdiction is an in-state plaintiff. Diversity jurisdiction is even less desirable in this case because it involves 55 unrelated claims concerning relatively small amounts—plaintiff is seeking to turn this Court into a small claims tribunal. This is precisely the type of matter that the amount in controversy requirement was intended to keep out of federal courts.[29] But these concerns are for Congress to address.

## C. *Burford Abstention*

Defendant contends that the Court should dismiss the action under the abstention doctrine announced in *Burford v. Sun Oil Co.*,[30] which prevents abstention when a federal court's exercise of jurisdiction "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[31]

▮▮▮ Defendant's principal argument for abstention is that federal courts will interfere with New York's no fault system if they interpret state regulations differently than state courts and state arbitrators. This argument fails. Defendant overlooks *Quackenbush,* in which the Court held that abstention principles permit district courts to dismiss suits only for equitable or declaratory relief, not suits for monetary relief.[32] In a suit for monetary relief, a federal court may enter a stay, but it may not dismiss the action altogether.[33] In damages actions where a question of state law is pending in the state courts and the district court wants to avoid inconsistent adjudications, the appropriate course is a stay, not dismissal.[34] But the mere fact that a case involves difficult questions of state law is not a ground for declining to exercise jurisdiction. "Congress having

---

**28.** 166 F.3d at 62. Nevertheless, the court noted that "[s]ome commentators suggest that the current system, which creates original jurisdiction over aggregated claims that would not independently be triable in federal court, is nonsensical." *Id.* at 62 n. 2 (citing 14B WRIGHT § 3704).

**29.** *See Snyder,* 394 U.S. at 340, 89 S.Ct. 1053 (congressional purpose in increasing jurisdictional amount was "to check ... the rising caseload of the federal courts").

**30.** 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**31.** *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 727, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)).

**32.** 517 U.S. at 730, 116 S.Ct. 1712.

**33.** *Id.* at 730–31, 116 S.Ct. 1712.

**34.** *Id.*

adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine."[35]

■ As this is an ordinary breach of contract suit in which plaintiff seeks only monetary relief, dismissal under *Burford* is not warranted. Nor would a stay be justified, at least at this stage of the litigation. The only question of state law that defendant has identified as troublesome is the issue of defining medical necessity under Section 5102 over the New York Insurance Law. The Court need not address whether this issue would ever warrant a stay, as the issue has not yet arisen in this case.

## D. *Severance*

■ Rule 21 of the Federal Rules of Civil Procedure provides, in relevant part, that "[a]ny claim against a party may be severed and proceeded with separately." The decision to sever is committed to the discretion of the district court,[36] and the court may sever either on its own initiative or on the motion of a party.[37] In deciding whether to sever, courts consider:

"(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims."[38]

■ Having preliminarily reviewed these factors, the Court is inclined to sever the individual insurance claims. They involve unrelated accidents and do not appear to involve any common questions of law or fact. In addition, judicial economy favors severance because the actions involve small, local matters more appropriately raised in state courts. Moreover, plaintiff would not be prejudiced, as it can file these claims in state court. In similar actions that have been filed in this circuit, other courts have severed the individual insurance claims.[39] Should the Court sever the claims, the resulting actions would not satisfy the amount in controversy requirement and would be dismissed for lack of subject matter jurisdiction.[40]

**35.** *Meredith v. Winter Haven*, 320 U.S. 228, 236, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

**36.** *N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir.1988).

**37.** *See* FED. R. CIV. P. 21; *First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 635 (2d Cir.1972).

**38.** *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154–55 (S.D.N.Y.2003) (citing *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 204 F.R.D. 248, 250 (S.D.N.Y.2001)).

**39.** *E.g., Deajess Med. Imaging, P.C. v. Allstate Ins. Co.*, No. 03 Civ. 3916(LTS), 2004 WL 1920803 (S.D.N.Y. Aug. 27, 2004); *Boston Post Rd. Med Imaging, P.C. v. Geico Gen. Ins. Co.*, No. 03 Civ. 7390(JCF), 2004 WL 1810572 (S.D.N.Y. Aug. 12, 2004); *Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, No. 03 Civ. 3923(RCC), 2004 WL 1586429 (S.D.N.Y. July 15, 2004); *Deajess Med. Imaging, P.C. v. Travelers Indem. Co.*, No. 03 Civ. 8517(LLS), 222 F.R.D. 563 (S.D.N.Y. July 12, 2004); *Preferred Med. Imaging P.C. v. Geico Gen. Ins. Co.*, No. 03 Civ. 8726(NRB), 2004 WL 690735 (S.D.N.Y. Mar 31, 2004); *Preferred Med. Imaging, PC v. Allstate Ins. Co.*, 303 F.Supp.2d 476 (S.D.N.Y.2004).

**40.** *See* cases cited *supra* note 39; *cf. Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir.1968) (severance of claims under Rule 21 results in separate actions); 4 MOORE'S FEDERAL PRACTICE § 21.06 (3d ed. 2000) ("Severance under Rule 21 results in separate actions.... [T]he severed claim proceeds as a discrete, independent suit.").

Although the Court initially considers severance appropriate, it declines to act at this time because the parties have not briefed the issue. The Court therefore invites the parties to file briefs on the severance issue within ten days of this order.

## IV. Conclusion

Allstate's motion to dismiss [docket item 5] is granted to the extent that the action, insofar as it has been brought by plaintiff Moshe D. Fuld, is dismissed on consent. The motion is denied in all other respects. The parties may file briefs on the severance issue within ten days of this order.

SO ORDERED.