LCE LUX HOLDCO S.A.R.L., et al., Plaintiffs,

v.

ENTRETENIMIENTO GM DE MEXICO S.A. DE C.V., Defendant.

No. 10 Civ. 3610 (WHP).

United States District Court, S.D. New York.

Oct. 17, 2012.

Suzanna Marie Meyers Morales, Lathrop & Gage, LC, New York, NY, for Plaintiffs.

Hector Gonzalez, Dechert, LLP, New York, NY, for Defendant.

### MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

These motions plumb the interstices between diversity jurisdiction and the joinder rules and could have been lifted from a civil procedure exam. Plaintiffs LCE Lux Hold-Co S.a.r.l. ("LCE Lux"), LCE Mexican Holdings, Inc. ("Mexican Holdings"), and AMC Europe S.A. ("AMC Europe," collectively with LCE Lux and Mexican Holdings, "Plaintiffs") move pursuant to Rule 21 of the Federal Rules of Civil Procedure to add LCE Acquisition Sub, Inc. ("Acquisition Sub") and AMC Entertainment and dismiss LCE Lux and AMC Europe as plaintiffs from this action. For the following reasons, Plaintiffs' motions are granted.

## BACKGROUND

### I. *The Parties & the Agreement*

This is an action for breach of a contract governing the sale of Mexican movie theaters. AMC Entertainment, a Delaware corporation with its principal place of business in Missouri, operates 300 movie theaters throughout the United States. (Declaration of Mark A. McDonald, dated May 3, 2012 ("McDonald Decl.") ¶¶ 5–6.) Prior to 2006, AMC Entertainment, through various subsidiaries, also operated movie theaters in Mexico. (McDonald Decl. ¶ 7.) In 2006, AMC Entertainment decided to cease conducting business in Mexico and other international markets. (McDonald Decl. ¶ 7.) AMC Entertainment completed its withdrawal from Mexico in 2008. (Complaint, dated April 30, 2010 ("Compl.") ¶ 10.) At that time, three of its subsidiaries sold their interest in Mexican movie theaters to Defendant Entretenimiento GM de Mexico S.A. de C.V. ("Entretenimiento"), a Mexican corporation. (Complaint, dated April 30, 2010 ("Compl.") ¶¶ 7, 10.) These subsidiaries were (1) AMC Netherlands HoldCo B.V. ("AMC Netherlands"), a Dutch limited liability company; (2) Mexican Holdings, a Delaware corporation and a plaintiff in this action; and (3) AMC Europe, a French corporation and a plaintiff in this action. AMC Netherlands and Mexican Holdings were holding companies, and AMC Europe operated a theater in France. (McDonald Decl. ¶ 15.) The parties completed the sale pursuant to the Stock Purchase Agreement ("the Agreement"), dated November 5, 2008, which is the subject of this litigation. (Compl. ¶ 10.)

In 2009, AMC Entertainment approved the dissolution of AMC Netherlands. (McDonald Decl. Ex. 13 at 1.) On dissolution, AMC Netherlands assigned its interests in the Agreement to its parent, LCE Lux, which is a Luxembourg limited liability company and a plaintiff in the action. (Compl. ¶ 1; McDonald Decl. Ex. 13 at 1.) LCE Lux, in turn, assumed AMC Netherlands' obligations under the Agreement. (McDonald Decl. ¶ 34.) AMC Entertainment then dissolved LCE Lux. LCE Lux assigned the interests it acquired from AMC Netherlands to its own parent—LCE Acquisition Sub Inc.

("Acquisition Sub"), a Delaware corporation with its principal place of business in Missouri. (McDonald Decl. Ex. 14 at 1; *see also* Compl. ¶ 3.)

On November 9, 2011, AMC Entertainment approved a deal to dissolve AMC Europe following the sale of its French movie theater. (McDonald Decl. ¶ 28.) Apparently, AMC Entertainment had been trying to sell that movie theater since 2005. (McDonald Decl. ¶ 20.) On December 8, 2011, AMC Europe's shareholders approved a resolution dissolving the company. (McDonald Decl. ¶ 30.) And on January 18, 2012, after the sale of the French movie theater, AMC Europe entered into formal liquidation. (McDonald Decl. ¶ 32.) Like AMC Netherlands, AMC Europe assigned its interest in the Agreement to its parent—AMC Entertainment. (McDonald Decl. ¶ 34.) AMC Entertainment also assumed AMC Europe's obligations under the Agreement. (McDonald Decl. ¶ 34.)

In sum, Plaintiffs contend that the following entities now hold an interest in the Agreement: (1) Mexican Holdings, which is a signatory to the Agreement; (2) Acquisition Sub, which acquired its interest in the Agreement from LCE Lux, after LCE Lux acquired that interest from AMC Netherlands; and (3) AMC Entertainment, which acquired its interest from its subsidiary, AMC Europe.

### II. *Procedural Background*

 Plaintiffs filed their complaint on April 30, 2010, alleging that Entretenimiento breached the Agreement when it, *inter alia*, failed to pay various tax refunds and credits owed to them under the agreement. Because of various delays associated with complying with the requirements of the Mexican Central Authority, Plaintiffs did not effect service on Entretenimiento until November 2011. On November 23, 2011, counsel for Entretenimiento informed Plaintiffs that their complaint did not adequately allege diversity jurisdiction. (Declaration of Mauricio E. Espana, dated June 11, 2012 ("Espana Decl.") ¶ 3.) "Diversity is present when the action is between 'citizens of a State and citizens or subjects of a foreign state,' or

between 'citizens of different States and in which citizens or subjects of a foreign state are additional parties.'" *Univ. Licensing Corp. v. Paola del Lungo S.p.A.,* 293 F.3d 579, 581 (2d Cir.2002) (quoting 28 U.S.C. § 1332). But there is no diversity jurisdiction "where on one side there are citizens and aliens and on the opposite side there are only aliens." *Paola del Lungo,* 293 F.3d at 581.

Entretenimiento contends that the latter situation is present here. On one side, Plaintiffs consist of both citizens and aliens: Mexican Holdings is a Delaware corporation with its principal place of business in Missouri, LCE Lux is a citizen of Luxembourg, and AMC Europe is a citizen of France. And on the opposite side, Entretenimiento, the only defendant, is a Mexican citizen. *See Paola del Lungo,* 293 F.3d at 581.

Plaintiffs concede that the Court lacks diversity jurisdiction but move to cure this defect under Rule 21 of the Federal Rules of Civil Procedure. Specifically, Plaintiffs request that the Court dismiss LCE Lux and AMC Europe from this action. They also propose adding Acquisition Sub and AMC Entertainment as plaintiffs.

### DISCUSSION

I. *Validity of Assignment to AMC Entertainment*

Because the validity of the assignment to AMC Entertainment affects the pending motions, this Court addresses that issue first. Entretenimiento asserts that the assignment to AMC Entertainment was not valid because Section 12.9(a) of the Agreement prohibits such assignments. Section 12.9(a) of the Agreement provides:

Neither party may assign any of its rights under the Agreement without the prior written consent of the other parties, which will not be unreasonably withheld. Subject to the preceding sentence, this Agreement will apply to, be binding in all respects upon, and inure to the benefit of the successors and permitted assigns of the parties. Nothing expressed or referred in this agreement will be construed to give any Person other than the parties to this

Agreement any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement. This Agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this Agreement and their successors or assigns.

(McDonald Decl. Ex. 2 ("Agreement") at 64.) The parties agree that AMC Europe breached this provision because it did not obtain Entretenimiento's permission before assigning its rights to AMC Entertainment. The relevant question is whether this breach renders the assignment void.

"[A]ssignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments." *Macklowe v. 42nd St. Dev. Corp.,* 170 A.D.2d 388, 566 N.Y.S.2d 606, 606 (1st Dep't 1991). A contract lacks the requisite clear, definite, and appropriate language when it "contain[s] no provision that the assignment made without consent should be void, . . . that an assignee would acquire no rights by reason of any such assignment, [or] that the contractor shall not be required to recognize or accept any such assignment." *Sullivan v. Int'l Fid. Ins. Co.,* 96 A.D.2d 555, 465 N.Y.S.2d 235, 235 (2d Dep't 1983) (internal quotation marks and alterations omitted). In contrast, "where the language employed constitutes merely a personal covenant against assignments, an assignment made in violation of such covenant gives rise only to a claim for damages against the assignor for violation of the covenant." *Macklowe,* 566 N.Y.S.2d at 606. However, when the agreement evinces "a clearly stated intent to render [a party] powerless to assign, there [is] no need for the non-assignment clause to also contain talismanic language or magic words describing the effect of any attempt by the payee to make an assignment." *Singer Asset Fin. Co., LLC v. Bachus,* 294 A.D.2d 818, 820, 741 N.Y.S.2d 618 (4th Dep't 2002).

Section 12.9(a) does not contain the typical "talismanic" language that renders an assignment void. Nevertheless, Entretenimiento argues that Section 12.9(a) otherwise evinces an intent to render an assignment invalid.

In support of this argument, Entretenimiento relies on the principle that New York law "disfavors interpretations that render contract provisions meaningless or superfluous." *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir.2003). As Entretenimiento notes, the first sentence of Section 12.9(a) provides that a party may not assign its rights "without . . . prior written consent . . ., which will not be unreasonably withheld." (Agreement at 64.) The second sentence of Section 12.9(a) refers back to the first when it states: "*[s]ubject to the preceding sentence,* this Agreement will apply to, be binding in all respects upon, and inure to the benefit of the successors and *permitted* assigns of the parties." (Agreement at 64 (emphasis added).) Entretenimiento urges that the only way to give meaning to the words "subject to the preceding sentence" and "permitted" is to read the second sentence to mean that the benefits of the Agreement inure only to permitted assigns, as defined in the first sentence of Section 12.9(a).

But that is not the only way to breathe meaning into the second sentence. Entretenimiento overlooks the first sentence of Section 12.9(a), which provides that consent for an assignment may not be unreasonably withheld. Accordingly, "subject to the preceding sentence" may contemplate a situation where an assignor did not receive consent for an assignment, but that consent was unreasonably withheld. In other words, the second sentence could also mean that the benefits of the Agreement do inure to an unapproved assign because consent was unreasonably withheld.

Entretenimiento also relies heavily on Section 12.9(a)'s use of the word "permitted" in describing the assigns entitled to the benefits of the Agreement. But this argument has little force given that the fourth sentence of Section 12.9(a) abandons the use of "permitted" and simply states that "[t]his Agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this Agreement and their successors or assigns." (Agreement at 64.) Given these ambiguities, Entretenimiento fails to show that the Agreement evinces "a clearly stated intent to render [a party] powerless to

assign." *Singer,* 294 A.D.2d at 820, 741 N.Y.S.2d 618 (agreement provided that party had no power to assign); *cf. C.U. Annuity Serv. Corp. v. Young,* 281 A.D.2d 292, 722 N.Y.S.2d 236, 236 (1st Dep't 2001) (agreement stated party was powerless to assign rights). Accordingly, AMC Europe's assignment of its rights under the Agreement was valid. This Court need not address Plaintiffs' alternative argument that AMC Entertainment is AMC Europe's successor.

## II. *Rule 21 Motion*

### A. *Motion to Add Acquisition Sub and AMC Entertainment as Plaintiffs*

 Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Motions under Rule 21 are governed by the same standard as a motion to amend under Rule 15. *Johnson v. Bryson,* 851 F.Supp.2d 688, 703 (S.D.N.Y.2012); *Clarke v. Fonix Corp.,* No. 98 Civ. 6116(RPP), 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999), *aff'd,* 199 F.3d 1321 (2d Cir.1999) ("Although Rule 21, and not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule."); *see also Soroof Trading Dev. Co. v. GE Microgen, Inc.,* 283 F.R.D. 142, 146 (S.D.N.Y.2012). Under Rule 15(a)(2), leave to amend a complaint should be freely granted when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). Although leave to amend is "liberally granted," it may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir.2008) (internal quotation marks omitted). None of the factors disfavoring amendment are present here. As discussed above, Acquisition Sub and AMC Entertainment have rights under the Agreement, and accordingly, adding them to this action would not be futile. (McDonald Decl. Ex. 14 at 1; see also Compl. ¶ 3.) Nor have Plaintiffs exhibited undue de-

lay. Thus, Plaintiffs' motion to add Acquisition Sub and AMC Entertainment is granted.

### B. *Motion to drop LCE Lux and AMC Europe as Plaintiffs*

Under Rule 21, a district court "may allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); *see also Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub'g Corp.,* 635 F.3d 48, 51 (2d Cir.2011). In determining whether a party is dispensable, courts consider "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b). A district court has "substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute." *Envirotech Corp. v. Bethlehem Steel Corp.,* 729 F.2d 70, 75 (2d Cir.1984) (internal quotation marks omitted). "[V]ery few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Universal Reinsur. Co. v. St. Paul Fire & Marine Ins. Co.,* 312 F.3d 82, 87 (2d Cir.2002) (internal quotation marks omitted).

Entretenimiento does not oppose Plaintiffs' request to dismiss LCE Lux from the action, but opposes the dismissal of AMC Europe. This Court therefore focuses on whether AMC Europe is a dispensable party.

### C. *Dispensable Party*

#### 1. *Prejudice and Extent to Which Prejudice Can Be Lessened*

The first two Rule 19(b) factors—the extent to which a judgment rendered in AMC Europe's absence may prejudice Entretenimiento and the extent to which any prejudice could be lessened or avoided—are closely related and favor Plaintiffs. Entretenimiento contends that AMC Europe's absence will prejudice it because it will be unable to assert counterclaims arising against AMC Europe and will need to file a separate lawsuit against AMC Europe to vindicate its rights under the Agreement. *See Rubler v. Unum Provident Corp.,* No. 04 Civ. 7102(DC), 2007 WL 188024, at *2–3 (S.D.N.Y. Jan. 25, 2007).

But *Rubler,* on which Entretenimiento relies, is distinguishable. That case also concerned a breach of contract claim and addressed whether a subsidiary that was a party to a contract was dispensable. *Rubler,* 2007 WL 188024, at *2–3. As in this case, the plaintiffs in *Rubler* argued that defendant would suffer no prejudice because the subsidiary's parent, which was not a signatory to the contract, remained a party to the lawsuit. *See* 2007 WL 188024, at *2–3. *Rubler* found that the defendant would be prejudiced by the subsidiary's dismissal, even though the subsidiary's parent remained in the case. 2007 WL 188024, at *2–3. Unlike the present case, however, the subsidiary in *Rubler* had not assigned its rights to its parent. Here, AMC Europe assigned its rights to its parent, AMC Entertainment, and AMC Entertainment in turn assumed AMC Europe's obligations under the Agreement. Because AMC Entertainment holds AMC Europe's interest in the Agreement and is able to satisfy claims that Entretenimiento may assert, dismissing AMC Europe will not prejudice Entretenimiento.

Additionally, because AMC Europe relinquished its rights under the Agreement, Entretenimiento does not risk facing multiple lawsuits if AMC Europe were dismissed. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 125 (2d Cir.1984) ("An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor."). Entretenimiento's argument that AMC Europe's liqui-

dator may still sue on behalf of AMC Europe is meritless because, again, AMC Europe has no rights under the Agreement to give to its liquidator.

### 2. *Adequacy of Judgment*

"Adequacy [of a judgment in AMC Europe's absence] refers to the public stake in settling disputes by wholes, whenever possible." *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 160 (2d Cir. 2009) (internal quotation marks omitted). Thus, this factor concerns the "social interest in the efficient administration of justice and the avoidance of multiple litigation." *CP Solutions*, 553 F.3d at 160 (internal quotation marks omitted). As discussed above, there is no threat that AMC Europe, once dropped from this action, will assert claims against Entretenimiento and subject Entretenimiento to multiple lawsuits. *See Aaron Ferer & Sons Ltd.*, 731 F.2d at 125. Moreover, Entretenimiento would not need to bring an additional lawsuit against AMC Europe to vindicate its rights under the Agreement because AMC Entertainment stands in AMC Europe's place. And as a practical matter, because AMC Europe is a dissolved entity with no assets, it is doubtful that Entretenimiento "would be eager for the chance to procure blood from a stone." *CP Solutions*, 553 F.3d at 160.

Entretenimiento claims that if Plaintiffs lose in the present litigation, they may collaterally attack the validity of the adverse judgment because AMC Europe was not present. But a collateral attack is unlikely because judicial estoppel bars Plaintiffs from making such an argument at a later time. *See In re Adelphia Recovery Trust*, 634 F.3d 678, 695–96 (2d Cir.2011) (judicial estoppel bars a party from taking a position when "(1) a party's later position is clearly inconsistent with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel").

### 3. *Adequacy of Remedy for Plaintiffs*

The final Rule 19(b) factor favors Entretenimiento. No discovery has been conducted in this case, and Plaintiffs cannot articulate any harm that would arise from re-filing in state court. *Cf. CP Solutions*, 553 F.3d at 160 (finding state forum inadequate because parties had been conducting discovery for two years). Plaintiffs contend that it took two years to effectuate service on Entretenimiento because of the requirements of the Mexican Central Authority, and they fear that re-filing this lawsuit will lead to additional delays. But there is no risk of repeating this delay because Entretenimiento agrees to waive service if Plaintiffs re-file in state court. (Transcript of Hearing, dated Aug. 1, 2012 ("Hr'g Tr.") at 13:7–14.) Notwithstanding that this factor favors Entretenimiento, the other factors together indicate that AMC Europe is a dispensable party. *Universal Rein. Co.*, 312 F.3d at 88–89. Accordingly, Plaintiffs' Rule 21 motion is granted.

### III. *Collusion*

Under 28 U.S.C. § 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Courts "give careful scrutiny to assignments which might operate to manufacture diversity jurisdiction." *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir.1995); *see also Synergy Advanced Pharm., Inc. v. CapeBio, LLC*, 797 F.Supp.2d 276, 286 (S.D.N.Y.2011). Courts "construe Section 1359 broadly to bar any agreement whose primary aim is to concoct federal diversity jurisdiction." *Airlines Reporting*, 58 F.3d at 862 (internal quotation marks omitted). Because of the "increased possibility of collusion between related entities … assignments between parent companies and their subsidiaries must be treated as presumptively ineffective." *Airlines Reporting*, 58 F.3d at 862. While Plaintiffs contend in their briefs that this presumption is inapplicable, they conceded at oral argument that the presumption does, in fact, apply here. (Hr'g Tr. at 8:19–21 ("I agree there is a presumption because of the intercorporate transfer. There is a presumption that is [sic] for the purpose of creating diversity.").)

To rebut this presumption, the party invoking jurisdiction must "articulate a legitimate business purpose for the assignment," *Airlines Reporting,* 58 F.3d at 863, and bears a "heavy burden of proof." *Prudential Oil Corp. v. Phillips Petroleum Corp.,* 546 F.2d 469, 476 (2d Cir.1976). Indeed, "simply offering evidence of a business reason will be insufficient to rebut the presumption. Instead, the burden falls on the party asserting diversity to demonstrate that the reason given for the assignment is legitimate, not pretextual." *Airlines Reporting,* 58 F.3d at 863; *see also Deajess Med. Imaging, P.C. v. Allstate Ins. Co.,* 344 F.Supp.2d 907, 910 (S.D.N.Y.2004). "In assessing whether an assignment is improper or collusive, courts consider, among other things, 'the assignee's lack of a previous connection with the claim assigned; the remittance by the assignee to the assignor of any recovery; whether the assignor actually controls the conduct of the litigation; the timing of the assignment; the lack of any meaningful consideration for the assignment; and the underlying purpose of the assignment.'" *Deajess Med.,* 344 F.Supp.2d at 910 (quoting *Airlines Reporting,* 58 F.3d at 863). No single factor is dispositive. *See Airlines Reporting,* 58 F.3d at 863.

Plaintiffs contend that the assignment of rights to AMC Entertainment facilitated AMC Entertainment's plan to end its international business—a plan that began two years before the sale of movie theaters to Entretenimiento. Entretenimiento counters that the timing of the assignment itself, rather than the plan to exit the international market, is relevant and suggests collusion. To be sure, AMC Europe did not assign its interest to AMC Entertainment until February 1, 2012, which was months after Entretenimiento alerted Plaintiffs of jurisdictional defects. *Cf. Airlines Reporting,* 58 F.3d at 864 (assignment was collusive where it followed challenge to subject matter jurisdiction).

Nevertheless, while the timing of this assignment suggests collusion, the other factors rebut the presumption that the assignment to AMC Entertainment is ineffective. First, nothing suggests that AMC Entertainment will remit any recovery to AMC Europe. Indeed, AMC Europe does not exist anymore. Further, because AMC Europe no longer exists, it is clear that AMC Entertainment, and not AMC Europe, controls the conduct of the litigation. *Cf. Prudential Oil,* 546 F.2d at 476 (finding collusion where assignor continued to conduct litigation). And, unlike in *Airlines Reporting,* where there was no consideration provided for the assignment, AMC Entertainment suffered a detriment when it obtained rights under the Agreement. *See Airlines Reporting,* 58 F.3d at 864. In exchange for that benefit, AMC Entertainment assumed AMC Europe's obligations under the Agreement.

Finally, the underlying purpose of the assignment—to facilitate AMC Entertainment's exit from the international market—appears valid. Indeed, Plaintiffs demonstrate that AMC Europe attempted to sell its French movie theater long before this litigation commenced. And in that same period, another AMC entity—AMC Netherlands—assigned its rights to its parent upon dissolution as part of the effort to wind up its international business. *Cf. Airlines Reporting,* 58 F.3d at 864 ("That [Plaintiff] was not preoccupied with its asserted concerns prior to the prosecution of this litigation speaks volumes towards its true motivation in acquiring the assignments—gaining a federal forum."); *cf. also Prudential Oil,* 546 F.2d at 476 (rejecting explanation that assignment made to facilitate a joint venture when "no showing that a joint venture had ever existed"). Accordingly, this Court finds that AMC Europe's assignment of its rights to AMC Entertainment was not collusive. For these same reasons, this Court also rejects Entretenimiento's argument that the assignment violates New York Judiciary Law Section 489. *Ehrlich v. Rebco Ins. Exch.,* 225 A.D.2d 75, 649 N.Y.S.2d 672, 672 (1st Dep't 1996) (New York Judiciary Law Section 489 is "the statutory codification of the ancient doctrine of champerty," and "prohibits a corporation from taking an assignment of any claim with the intent and for the purpose of bringing an action or proceeding thereon" (internal quotation marks and citations omitted)).

**240**

*CONCLUSION*

For the foregoing reasons, Plaintiffs' motion to dismiss LCE Lux HoldCo S.a.r.l. and AMC Europe S.A. from this action is granted. Further, LCE Mexican Holdings, Inc.'s motion to add LCE Acquisition Sub, Inc. and AMC Entertainment is granted. Plaintiffs are directed to file and serve an amended complaint consistent with this Memorandum & Order by October 31, 2012. The Clerk of the Court is directed to terminate the motion pending at ECF No. 31.

SO ORDERED.